Louise BASS, et al., Appellants,

v.

**NATIONAL SUPER MARKETS,
INC., Respondent.**

No. 77915.

Supreme Court of Missouri,
En Banc.

Nov. 21, 1995.

Rehearing Denied Dec. 19, 1995.

Leonard P. Cervantes, Edward J. Deghroony, St. Louis, for appellants.

Ronald C. Willenbrock, Mark R. Dunn, St. Louis, for respondent.

ROBERTSON, Judge.

We granted transfer to reexamine the manner in which appellate courts of this state have made determinations of statutory employment under section 287.040, RSMo 1994. The specific issue in this case is whether the trial court properly concluded as a matter of law that section 287.040, RSMo 1994, rendered plaintiffs' decedent, who performed floor care duties as the employee of an independent contractor, a statutory employee under The Workers' Compensation Law (the "Act"). As more fully explained, we hold that the performance of routine, frequent, and regular contractual duties is within the usual business of the employer and falls under the coverage of the Act.

Our jurisdiction is founded on article V, section 10 of the Missouri Constitution. The judgment of the trial court is affirmed.

## I.

There is no dispute as to the facts in this case, only their meaning. We take the facts from the evidence the Bass plaintiffs offered.

In August, 1986, Building Butlers, Inc. ("BBI") orally contracted with National Super Markets ("National") to furnish personnel and provide janitorial services at National's Natural Bridge store in St. Louis. Under the agreement, BBI personnel swept and dust mopped the floor, scraped up gum or labels stuck to the floor, scrubbed, spot mopped, and buffed the floor with a propane powered buffer every night after National closed the store. In addition to the nightly cleaning, BBI agreed to wax the floor periodically and to strip the floor and apply fresh wax at less frequent, but regular intervals.

BBI hired Kenneth Bass. On the night of September 4, 1987, BBI assigned Bass to perform the routine janitorial services required by the agreement with National at the Natural Bridge store. Between 10:00 and 11:00 p.m. that night, two men forced their way past a security guard and into National's store. During the course of the robbery, these men shot and killed several people, including Bass.

On May 4, 1988, Louise Bass, decedent's wife, and Maurice and Christopher Bass, decedent's surviving children, filed a civil action for wrongful death against National averring that National negligently failed to provide adequate security to protect Bass. National filed a motion to dismiss for lack of subject matter jurisdiction on the grounds that decedent was its statutory employee. The trial court initially overruled the motion.

The case proceeded to trial. The jury returned a substantial verdict against National. National filed a motion for a judgment notwithstanding the verdict, renewing its argument that jurisdiction of the Bass' claim was in the Labor and Industrial Relations Commission. The trial court reviewed the evidence, concluded that it lacked subject matter jurisdiction to entertain a civil action for damages in wrongful death because Bass was a statutory employee of National subject to the compensation provided by the Act, sustained the motion and entered judgment accordingly. On appeal, the Court of Ap-

peals, Eastern District, reversed and remanded with instructions to reinstate the verdict.

## II.

### A.

The common law provided an employer with several defenses to a civil claim for damages filed by an employee. Three of these, assumption of the risk, contributory negligence, and the employer's non-liability for acts of third parties, effectively barred the negligent employee from recovering damages in a common law action for work-related injuries in most cases. The common law permitted an injured employee to recover for work-related injuries only if he or she could prove that the accident resulted solely from the employer's negligence. *See generally* Arthur Larson 1, The Law of Workmen's Compensation, § 4.30 (1952).

Responding to the common law's seeming inability to fashion a remedy to provide redress for workers injured in increasingly common industrial accidents, state legislatures adopted worker's compensation laws that imposed a statutory contractual provision on the employee-employer relationship. *Oren v. Swift & Co.*, 330 Mo. 869, 51 S.W.2d 59, 61 (banc 1932). The statutory contract provided a means of compensating the injured worker that, with exceptions, eliminated the common law's concerns with negligence and fault altogether, established levels of compensation and provided for administrative determinations of the nature and extent of injury, subject to judicial review.

In 1925, Missouri's legislature adopted its first workmen's compensation law, 1925 Mo. Laws 375, directing that "[a]ll of the provisions of this act shall be liberally construed with a view to the public welfare." § 3374, RSMo 1929. *Cf.* § 287.800, RSMo 1994.

 Appellate courts of this state have interpreted the legislature's admonition to construe the Act liberally to mean that "[t]he legislative design ... was to ameliorate, in the interest of the workman and the public welfare, the losses sustained by himself and his dependents from accidental injuries received by him in the proper course of his work...." *Maltz v. Jackoway–Katz Cap Co.*, 336 Mo. 1000, 82 S.W.2d 909, 912 (banc

1935). Further, liberal construction of the Act requires that "where a question of jurisdiction is in doubt, it should be held to be in favor of the [Labor and Industrial Relations] commission." *Ringeisen v. Insulation Services, Inc.*, 539 S.W.2d 621, 626 (Mo.App. 1976).

This Court is aware that the adoption of comparative fault in *Gustafson v. Benda*, 661 S.W.2d 11, 15 (Mo. banc 1983), makes the policy rationale underlying the Act less compelling. The Court is further aware—as this case illustrates—that an injured worker often prefers that a jury decide liability and damage issues in a civil suit rather than submit to the statutorily imposed compensation limitations found in the Act. Nevertheless, the legislature has not altered the scope or applicability of the Act since *Gustafson*, nor the requirement that courts liberally construe its provisions.

### B.

 The dispositive issue in this case is whether Kenneth Bass worked as a statutory employee of National under section 287.040.

Section 287.040.1 defines a statutory employee.

> Any person who has work done under contract on or about his premises which is an operation of the usual business he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

The General Assembly adopted section 287.040 to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform. *Walton v. U.S. Steel Corp.*, 362 S.W.2d 617, 622 (Mo. banc 1962).

 As the statute makes clear, statutory employment exists when three elements coexist: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of

business of the alleged statutory employer. *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 534 (Mo. banc 1988).

The first two elements are not at issue in this case. The parties agree that National orally contracted with BBI for floor cleaning services and that Bass's death occurred on National's premises.

The third element—whether the floor cleaning services performed by BBI and Bass were within the usual course of National's business—is the focus of the case. National contends that the care and maintenance of its floors is within the usual course of its business. The Bass plaintiffs urge that Kenneth Bass was not a statutory employee because National's usual business is to buy, sell, manufacture, process and otherwise deal in groceries, produce, meat and general merchandise. Further, they argue that BBI used specialized equipment and procedures to perform the contractual duties. Under the plaintiffs' reasoning, National is not in the floor-cleaning business and the work performed by BBI employees under BBI's contract with National lies outside National's usual business.

### C.

■ Courts have wrestled with the meaning of the phrases "usual business" and "usual course of business" in section 287.040.1. Although the cases do not fall neatly into rigid categories, two basic, analytical constructs inform the courts' decisions. The first line of cases say that the usual business of a company encompasses all of those activities that are essential and integral to the statutory employer's business. *See, e.g., Viselli v. Missouri Theatre Building Corp.*, 361 Mo. 280, 234 S.W.2d 563, 567 (banc 1950) (window washing is within the usual business of a company that rented property to commercial tenants because essential); *Wooten v. Youthcraft Manufacturing Co.*, 312 S.W.2d 1, 3 (Mo. banc 1958) (janitorial service at a clothing manufacturer formerly performed by employees not an essential part of manufacturer's trade or business when contracted

to an independent contractor);[1] *March v. Bernardin*, 229 Mo.App. 246, 76 S.W.2d 706, 708 (1934) (annual repair of boiler within usual business of coal mine because necessary to operation of business); *Kennedy v. J.D. Carson Co.*, 149 S.W.2d 424, 428 (Mo. App.1941) (repair of an elevator is essential and therefore within the usual business of a furniture company where exhibition, sales and delivery of furniture requires use of the elevator); *Heskett v. Central Missouri State University*, 745 S.W.2d 712, 713 (Mo.App. 1987) (preparation of food is integral part of university's activities); *Mooney v. Missouri Athletic Club*, 859 S.W.2d 772, 774 (Mo.App. 1993) (furnishing security is integral part of athletic club's operation); *Miller v. McDonnell Douglas Corp.*, 896 S.W.2d 734, 737 (Mo. App.1995) (installation and maintenance of a telecommunications system is part of the usual course of business of an airplane manufacturer because necessary to conduct business).

A second line of cases places greater focus on the routine and frequent nature of the independent contractor's activities to determine whether the work is within the usual business of the putative employer. *See, e.g., Anderson v. Benson Mfg. Co.*, 338 S.W.2d 812, 815 (Mo.1960) (guard services performed regularly and continuously to protect classified material within usual business); *Shaver v. First Union Realty Management, Inc.*, 713 S.W.2d 297, 300 (Mo. banc 1986) (full-time maintenance of heating and air conditioning equipment within usual business of company engaged in managing real estate); *Musielak International Shoe Co.*, 387 S.W.2d 217 (Mo.App.1965) (employee of an independent contractor supplying janitorial services to a shoe manufacturer not statutory employee when removing paint from a floor in preparation for remodeling because remodeling not usually and customarily done); *Rouge v. St. Charles Speedway*, 733 S.W.2d 854, 856 (Mo.App.1987) (even though the employer used the public address system as an integral part of its business, episodic repair of that

---

1. Professor Larson describes *Wooten* as "[a] really remarkable decision" that would seem "grotesquely illiberal" if the holding had not permitted a damage suit to proceed. *Wooten* is wrongly decided precisely because it ignores the legisla-ture's mandate that the Act be liberally construed to provide coverage under the Act. This is so without regard to whether an underlying damage suit holds out the hope of a recovery.

system was not sufficient to constitute a part of the operation of speedway's usual business); *McGuire v. Tenneco, Inc.,* 756 S.W.2d 532, 535 (Mo. banc 1988) (sweeping a warehouse floor is within the usual business of company that operates paper recycling plant because work is regularly performed); *Taylor v. Associated Electric Cooperative, Inc.,* 818 S.W.2d 669, 671 (Mo.App.1991) (painting water storage tanks at a coal-fired electricity generating plant is not within the usual business of a rural electric cooperative since only occasionally necessary).

The difficulties that attend holdings relying on the essential/integral test are obvious from the uneven results reached in the cases. In order to maximize profits, businesses generally limit expenditures to those goods and services that are necessary to ongoing or planned activities. Thus, any activity undertaken or service contracted for is arguably essential and integral to the usual business of the putative employer no matter how removed from the work its employees regularly perform its day-to-day operation.

With notable exceptions, the cases employing the essential/integral test are older than those that use a routine/frequent analysis. It appears that the older cases are written more broadly to accommodate the common law's contributory fault system that denied recovery to any employee whose negligence contributed to his or her injury. Absent workers' compensation coverage, the employee—and ultimately society—bore the entire economic burden of the injury. By extending the Act's coverage to essential or integral business purposes, courts permitted compensation where it would not otherwise have existed.

The routine/frequent test is more narrow. It also has the virtue of more closely accommodating the legislature's intent in adopting section 287.040.1—to prevent employers from avoiding their duties under the Act by contracting out work that their employees would normally do. And it does so without sweeping within its reach specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees.

Against this precedent and understanding of the legislature's purpose, we define a puta-

tive employer's "usual business" as used in section 287.040 as those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

### D.

When an action for damages arising from employment is filed in the circuit court, the court must decide initially whether it or the Labor and Industrial Relations Commission has jurisdiction to address the issues raised. In determining the existence of statutory employment that would place the matter properly before the Commission, courts must consider the agreement between the putative employer and the independent contractor as a whole. The manner in which the independent contractor performed its contractual obligations is not relevant to the section 287.040 inquiry. Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide. Only where the parties disagree as to whether the work that caused the injury was work performed under and required by the contract between the putative statutory employer and the independent contractor will a factfinder be asked to render a factual decision. Finally, until directed by the legislature to embark on another course, courts must continue to give the Act a liberal reading, deciding close cases in favor of workers' compensation coverage.

### E.

In the case *sub judice* and based on the evidence the Bass plaintiffs submitted, Bass worked under an oral agreement between BBI and National for routine floor maintenance. The agreement required nightly cleaning as well as periodic stripping and waxing of National's floors. This work was routinely done on a regular and frequent schedule and repeated over a relatively short

span of time. Absent its contract with BBI, National would have had either to assign floor care duties to its staff or to hire a staff specifically to maintain its floors. This is because regulations of the Department of Health, of which we take judicial notice and under which National operates, require that the "[c]leaning of floors, walls and ceilings shall be done as often as necessary." 19 CSR 20–1.020(23) (1992). We conclude, therefore, that at the time of his death Bass was performing work within the usual course of National's business. The trial court properly found Bass a statutory employee of National as a matter of law.

### III.

The judgment of the trial court is affirmed.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH and COVINGTON, JJ., and EDWARDS, Senior Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.