George E. HOLMES, Employee–
Appellant,

v.

INTERIORS BY CANOVA,
Employer–Respondent.

No. 24310.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 7, 2001.

John C. Banning, of Reynolds & Gold, P.C., of Springfield, MO, for Appellant.

Tamara F. DeWild and Rebecca J. Tatlow, of Whiteaker & Wilson, P.C., of Springfield, MO, for Respondent.

JAMES K. PREWITT, Judge.

George E. Holmes ("Holmes") appeals an order of the Labor and Industrial Relations Commission ("Commission") which denied his claim for workers' compensation benefits. Interiors by Canova hired Holmes, proprietor of a company providing "handyman-type" services, to install track lighting in its store to highlight displays of knickknacks Interiors by Canova sold. Holmes was standing on a ladder installing the lighting when he touched a hot conduit and received an electric shock, causing him to fall off the ladder, hit his head, and lose consciousness.

Seeking compensation for his resulting injuries, Holmes filed a claim for workers' compensation benefits, asserting that Interiors by Canova was his statutory employer. The administrative law judge for the Division of Worker's Compensation found that Holmes was not the statutory employee of Interiors by Canova and thus not entitled to workers' compensation benefits. The Commission, upon review, upheld that determination. Finding that Interiors by Canova was not Holmes' statutory employer, we affirm the order of the Commission.

### Facts

Appellant George E. Holmes, during the years 1993 to 1994, owned and operated George's Maintenance Company ("GMC"), an independent contracting company that provides "handyman-type" services. GMC was formed as a corporation. In addition to Holmes, it had three employees. The employees all were paid their wages by GMC, not the persons or businesses whom GMC served. GMC deducted Social Security and other required withholdings from the employees' paychecks. In addition, the company carried workers' compensation insurance for each of the employees except for Holmes. Holmes, as owner of

GMC, opted not to cover himself under the company's workers' compensation coverage.

The accident in question occurred in August, 1994. Dennis Canova ("Canova"), owner of Interiors by Canova, had entered into an oral contract with Holmes for GMC to install track lighting in a new store he was opening at Battlefield Mall in Springfield, Missouri. Interiors by Canova sold decorative accessories for the home. Canova wanted the track lighting installed to highlight glass shelves on which he planned to display knickknacks.

Canova had previously secured the services of GMC to perform some work at his home and to install ceiling tile for his store in Fayetteville, Arkansas. On August 5, 1994, Holmes and another employee were installing the lighting at the Battlefield Mall store, when Holmes touched a hot conduit, received an electric shock, fell off the ladder he was standing on, and was knocked unconscious. Holmes suffered from a head injury, neck pain, a hearing loss, tinnitus, a concussion, and post-traumatic seizures. His medical expenses totaled $3,958.61. In addition, Holmes missed approximately one month of work.

After his accident, Holmes had another employee of GMC finish the installation of lighting at Canova's store. Interiors by Canova paid GMC $1,105.39 for the labor GMC provided.

Holmes filed a claim for compensation with the Division of Workers' Compensation ("Division") on March 13, 1995. He originally listed GMC as his employer, but in an amended claim he stated that Interiors by Canova was his employer. Holmes asserted at hearing that Interiors by Canova was his statutory employer, under § 287.040.1, RSMo 1994.

The Division denied his claim for compensation, finding that Interiors by Canova was not Holmes' statutory employer. Relying on the interpretation of § 287.040 stated in *Scott v. Edwards Transp. Co.*, 807 S.W.2d 75, 78 (Mo.banc 1991), the Division determined that the work Holmes performed for Interiors by Canova was not part of the "usual business" of the store, as such work was not "routinely performed" in the operation of Interiors by Canova's business.

Upon review, the Commission affirmed the Division's award denying compensation. The Commission applied the so-called "routine/frequent" test for determining if the work of an independent contractor was performed as part of the "usual business" of the alleged statutory employer adopted by the Missouri Supreme Court in *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617 (Mo.banc 1995).

Holmes argued that *Bass* could not be applied retrospectively to his injury which occurred prior to the decision in *Bass*. The Commission disagreed, citing numerous cases in which the Missouri Court of Appeals had applied the test in *Bass* to injuries predating that opinion, including *Parker v. National Super Markets, Inc.*, 914 S.W.2d 30 (Mo.App.1995); *Zerebco v. Lolli Bros. Livestock Market*, 918 S.W.2d 931 (Mo.App.1996); *Anders v. A.D. Jacobson, Inc.*, 972 S.W.2d 612 (Mo.App.1998); *DiMaggio v. Johnston Audio/D & M Sound*, 19 S.W.3d 185 (Mo.App.2000); *Murry v. Mercantile Bank, N.A.*, 34 S.W.3d 193 (Mo.App.2000); *Tullman v. St. Louis Science Ctr. Found.*, 34 S.W.3d 860 (Mo.App. 2001); and *Busselle v. Wal–Mart*, 37 S.W.3d 839 (Mo.App.2001). The Commission acknowledged that "[u]nder the essential/integral test, claimant's installation of lighting was an activity that would probably be considered to be in the usual business of Interiors by Canova."

Because there was no evidence that Holmes and Interiors by Canova had an

agreement contemplating that Holmes' work would be repeated over a short period of time or that Canova would have had to hire permanent employees to complete the work absent its agreement with GMC, the Commission concluded that Holmes' work was not part of the "usual business" of Interiors by Canova and thus Interiors by Canova was not liable under § 287.040.1 for Holmes' injuries. This appeal follows.

## Discussion

Appellate review of a workers' compensation award is governed by § 287.495, RSMo 2000. Decisions of the Labor and Industrial Relations Commission may be set aside "only if there is not substantial and competent evidence to support it or if it is clearly contrary to the overwhelming weight of the evidence." *Dunn v. Hussman Corp.*, 892 S.W.2d 676, 680–81 (Mo.App.1994). Findings and awards of the Commission which are based on the interpretation of law, rather than the determination of facts, "are reviewed without deference to the Commission's judgment." *Shelton v. Missouri Baptist Med. Ctr.*, 42 S.W.3d 700, 701 (Mo.App. 2001). "Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass*, 911 S.W.2d at 621.

Section 287.040.1, RSMo 1994 provides that

[a]ny person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor ... when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

The purpose of this section is to prevent an employer from avoiding workers' compensation liability by hiring independent contractors to perform work which would otherwise be performed by its employees. *Bass*, 911 S.W.2d at 619; *Heller v. Aldi, Inc.*, 851 S.W.2d 82, 84 (Mo. App.1993). As with all workers' compensation statutes, this statute is to be construed liberally, "in furtherance of the purpose of enabling employees to receive compensation for injuries arising out of and in the course of employment." *State ex rel. Doe Run Co. v. Brown*, 918 S.W.2d 303, 307 (Mo.App.1996), *overruled on other grounds by Farmer v. Barlow Truck Lines, Inc.*, 979 S.W.2d 169 (Mo.banc 1998); *see also* § 287.800, RSMo.

A court may find that an employer is a "statutory employer" if the injured party performed the work pursuant to a contract, the injury complained of occurred on or about the premises of the alleged statutory employer, and the work performed by the injured party was in the usual course of business of the alleged statutory employer. *See DiMaggio*, 19 S.W.3d at 189; *Bass*, 911 S.W.2d at 619; *Tumbas v. J.L. Mason Group, Inc.*, 809 S.W.2d 188, 190 (Mo.App.1991).

The first two elements are not at issue in this case. The parties agree that Interiors by Canova orally contracted with Holmes to install lighting in its Battlefield Mall store and that Holmes was injured while performing such tasks. However, the parties dispute whether the work that Holmes performed was in the usual course of Interiors by Canova's business. Holmes contends the work was in the usual business of Interiors by Canova because the lighting he installed was essential to and an integral part of Interiors by Canova's business and the Commission would have found so if it had not applied *Bass*

retroactively. Interiors by Canova argues that Holmes was not the statutory employee of Interiors by Canova because Interiors by Canova's usual business was selling decorative items for the home, not construction or remodeling. Because the installation of special lighting was a one-time event, Interiors by Canova contends that such work was not part of its usual business.

In *Bass*, 911 S.W.2d at 620, the Missouri Supreme Court identified two "analytical constructs" used by courts in prior cases to determine whether an activity is within the "usual business" of the alleged statutory employer. Under the first construct, "the usual business of a company encompasses all of those activities that are essential and integral to the statutory employer's business." *Id.* Under the second construct, the "routine and frequent nature of the independent contractor's activities" are examined "to determine whether the work is within the usual business of the putative employer." *Id.*

The Court in *Bass* noted that uneven results were reached in cases relying upon the essential/integral test. *Id.* at 621. It reasoned that because businesses generally limit expenditures to necessary activities in order to maximize profits, "any activity undertaken or service contracted for is arguably essential and integral to the usual business of the putative employer." *Id.* In other words, the scope of the essential/integral test was too broad.

The Court also noted that generally "the cases employing the essential/integral test are older than those that use a routine/frequent analysis," perhaps because the older cases were trying to extend workers' compensation coverage to employees who otherwise would not receive compensation under the common law contributory fault system. *Id.*

The *Bass* court found that the narrower routine/frequent test "more closely accommodat[es] the legislature's intent in adopting section 287.040.1" to prevent employers from avoiding liability by contracting out activities its employees would normally perform. *Id.* It determined that the term "usual business" as used in § 287.040.1, RSMo 1994 refers to

> those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Id.; see also DiMaggio*, 19 S.W.3d at 189–90. It seems clear that in formally defining the term "usual business" where there had been a discrepancy in how that term was previously applied, the Court intended for its definition to be applied in all subsequent cases, to ensure uniform application of the law.

Holmes argues that courts considering statutory employment cases involving injuries which occurred prior to the *Bass* decision should not be limited to the *Bass* definition of "usual business" but should be free to apply the essential/integral test where the routine/frequent test would result in no compensation.

Holmes directs this court to *Trans UCU, Inc. v. Dir. of Revenue*, 808 S.W.2d 374, 377 (Mo.banc 1991), in which the Court followed the three-factor test it adopted in *Summers v. Summers*, 701 S.W.2d 720 (Mo.banc 1985), to determine whether a decision of a court which overrules prior precedent should be applied retrospectively or only prospectively. First, the reviewing court must determine whether the decision in question established a new principle of law " 'by overruling clear past precedent.' " *Trans UCU, Inc.*, 808 S.W.2d at 377 (quoting *Summers*,

701 S.W.2d at 724). Next, the court must determine " 'whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective operation.' " *Trans UCU, Inc.,* 808 S.W.2d at 377 (quoting *Sumners,* 701 S.W.2d at 724). Finally, the court must " 'balance the interests of those who may be affected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule.' " *Trans UCU, Inc.,* 808 S.W.2d at 377 (quoting *Sumners,* 701 S.W.2d at 724).

In *Trans UCU, Inc.,* the Court determined that the decision in question before it, which abandoned the "taxable moment doctrine," should be applied prospectively only because companies relied upon the prior ruling when making purchases and retrospective application of the ruling would cause those companies to incur substantial tax liability and penalties.

In contrast, the ruling disputed in the present case, *Bass* demands retrospective application. First, the *Bass* decision clarified a division in prior precedent on how to interpret the term "usual business" found in § 287.040.1. It did not "overrule clear past precedent."

Second, the purpose and effect of the *Bass* court's definition of "usual business," to ensure use of an interpretation of that term "more closely accommodating the legislature's intent in adopting section 287.040.1," *Bass,* 911 S.W.2d at 621, only will be enhanced by retrospective application, as numerous cases being decided subsequent to *Bass* stem from injuries occurring before the *Bass* decision. Prospective-only application of *Bass* could create years more of conflicting determinations of statutory employment.

Finally, balancing the interests of parties who were injured prior to the *Bass* decision with those of the putative employers who would be denied benefit of the *Bass* clarification of the term "usual business" favors retrospective application of the decision. Independent contractors typically work in a variety of situations: sometimes they may work under long-term contracts with a single entity, other times they may handle jobs for several companies concurrently or in rapid succession. As the term "usual business" was applied inconsistently prior to *Bass,* it would seem unlikely that any independent contractor would rely on just one definition of the term in deciding whether to purchase workers' compensation coverage when a court could apply the other definition to his or her detriment. There is no evidence in the present case that Holmes relied upon the essential/integral definition of "usual business" when he decided to purchase workers' compensation coverage only for his employees and not for himself. We cannot find that retrospective application of *Bass* will result in hardship to Holmes if he had not clearly relied upon the availability of the essential/integral definition prior to his injury.

Holmes concedes that his work cannot be considered the "usual business" of Interiors by Canova under the definition of that term articulated in *Bass.* As we determine that the *Bass* decision should be applied retrospectively, we must deny his claim.

The decision of the Labor and Industrial Relations Commission is affirmed.

BARNEY, C.J., and PARRISH, P.J., concur.