Juan RUBIO, et ux., Appellants,

v.

HOME DEPOT, U.S.A., INC., Respondent.

No. WD 65157.

Missouri Court of Appeals, Western District.

Jan. 31, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2006.

Application for Transfer Denied May 2, 2006.

---

**5.** The coalition defendants' motion for costs and attorneys' fees is denied.

Michael D. Matteuzzi, Leawood, KS, Chad C. Beaver, Co–Counsel, Kansas City, MO, for appellants.

Samuel P. Logan, James D. Oliver, Co–Counsel, Overland Park, KS, for respondent.

Before RONALD R. HOLLIGER, Presiding Judge, ROBERT G. ULRICH, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Juan Rubio and Alice Q. Rubio filed a two-count petition against Home Depot for injuries Juan Rubio allegedly sustained when a Home Depot employee operating a forklift negligently caused a pallet of merchandise to fall from a top shelf and strike Mr. Rubio. In Count I, Mr. Rubio sought damages for his personal injuries based on the alleged negligence of the Home Depot employee. In Count II, Mrs. Rubio prayed for damages for loss of consortium.[1] The trial court dismissed the action, finding that Mr. Rubio was a statutory employee of Home Depot and that The Workers' Compensation Law, §§ 287.010 et seq.,[2] was his exclusive remedy. The Rubios bring this appeal.

At the time of the alleged accident, Mr. Rubio was an employee of ProMarketing, Inc. Although Mr. Rubio traveled to different states in the course of his employment with ProMarketing, Mr. Rubio lived in Texas, and the majority of his work was undertaken in the state of Texas. At the time of the accident, Home Depot store # 3016, located on Bannister Road in Kansas City, Missouri, where the accident occurred, was not yet open; Home Depot

---

1. Alice Rubio's claim is derivative of Mr. Rubio's claim. *Wright v. Barr,* 62 S.W.3d 509, 536 (Mo.App. W.D.2001).

2. All statutory references are to RSMO (2000) unless other otherwise noted.

was preparing it for opening to the public. As an employee of ProMarketing, Juan Rubio was directed by ProMarketing to travel to the Home Depot store # 3016. No representative of Home Depot directly requested the services of ProMarketing or the services of Mr. Rubio; instead, Home Depot contracted with a separate third party, Eveready Battery Company, Inc., who, in turn, contracted with ProMarketing to erect Eveready product displays in new Home Depot stores.

Since 1991 Home Depot has maintained a "Vendor Buying Agreement" (VBA) with Eveready Battery Company (Eveready) of St. Louis, Missouri, to supply products to new and existing Home Depot Stores. Between July 1999 and June 2000, Eveready subcontracted with ProMarketing to set up product displays in new Home Depot stores in the Midwest Division.

When Mr. Rubio was dispatched by ProMarketing to the Home Depot store in Kansas City, he traveled in a van owned by ProMarketing that was loaded with tools owned by ProMarketing. Mr. Rubio used ProMarketing's tools exclusively in the performance of his display set-up responsibilities. While at the Home Depot store, Mr. Rubio received no instruction from any Home Depot employee while performing his job responsibilities for Pro-Marketing. Home Depot employees had no right of control over his activities. After erecting a display in the Kansas City Home Depot store, Mr. Rubio planned to leave that store without any intention, or without any predetermined date, to return for any reason. He was present at that store for one or two days, and he received all payment for the services he performed at that store from ProMarketing.

Mr. Rubio and his wife are residents of Texas. After the accident, Mr. Rubio filed a workers' compensation claim against ProMarketing in Texas; that claim is pending before the Texas Workers' Compensation Commission and is being paid solely by ProMarketing's workers' compensation insurance carrier pursuant to the Texas statutory scheme. As a result of the severe injuries he sustained in this accident, by November 2003, Mr. Rubio had already received approximately $170,000 in medical and wage benefits pursuant to his claim against ProMarketing.

Pursuant to the choice made available to Texas employers under Tex.Lab.Code Ann. § 406.033, Home Depot chose to opt out of the Texas workers' compensation scheme for, at the very least, years 1999 through the date of this accident.

On October 7, 2003, Home Depot moved to dismiss the Rubios' action for lack of subject matter jurisdiction on the ground that Home Depot was Mr. Rubio's statutory employer and, therefore, the Missouri Workers Compensation Law provided his exclusive remedy. The motion was supported by affidavits and documentary exhibits. The Rubios opposed the motion with suggestions and their own affidavits and documentary exhibits. On July 14, 2004, the trial court directed the parties to provide additional evidentiary material on certain issues, and the parties timely complied with that order.

On or about January 14, 2005, the trial court granted Home Depot's Motion to Dismiss for Lack of Subject Matter Jurisdiction on the basis that, under Missouri law, Mr. Rubio was a statutory employee of Home Depot on the date of the accident and, therefore, was not entitled to bring a civil lawsuit against Home Depot.

The Rubios bring two points on appeal. In their first point, they claim that the trial court erred in dismissing their action because Mr. Rubio was not a statutory employee of Home Depot pursuant to the appropriate test interpreting and applying

§ 287.040. In Point II, the Rubios claim the trial court erred in applying Missouri law in that proper choice of law analysis requires application of Texas law because that is the state wherein Mr. Rubio first filed for and collected workers' compensation benefits, and Texas law affords Mr. Rubio the right to sue Home Depot in a civil action irrespective of whether he was a statutory employee on the date of the accident.

■■■■ A motion to dismiss for lack of subject matter jurisdiction is a proper means of raising the workers' compensation law as a defense to a common law tort action. *James v. Poppa*, 85 S.W.3d 8, 9 (Mo. banc 2002). "A court shall dismiss the action whenever it 'appears' by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction. *Rule 55.27(g)(3)*. As the term 'appears' suggests, the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction." *Id.*

> Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide. Only where the parties disagree as to whether the work that caused the injury was work performed under and required by the contract between the putative statutory employer and the independent contractor will a factfinder be asked to render a factual decision.

*Bass v. National Super Mkts., Inc.*, 911 S.W.2d 617, 621 (Mo. banc 1995).

Section 287.040 provides, in pertinent part:

> 1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

> * * *

> 4. In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors.... The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. Such recovery may be had on motion in the original proceedings. No such employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer.

In *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617 (Mo. banc 1995), the Missouri Supreme Court held that another company is a statutory co-employer pursuant to § 287.040 if: "(1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer." *Id.* at 619–20.

■■■■ In the instant appeal, it is conceded that Home Depot had a contract with Eveready, which in turn had a contract with ProMarketing, Mr. Rubio's primary employer. It is likewise conceded for purposes of the issue before us that the alleged injury occurred on Home Depot's premises. Thus, this case turns on the question whether the work performed by

Mr. Rubio was in the "usual course of business" for Home Depot.

The *Bass* Court also addressed what comes within an employer's "usual course of business." It adopted what it called the "routine/frequent test," and defined "usual business" to only include "those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." *Id.* at 621. In doing so, the Court noted that the routine/frequent test "has the virtue of more closely accommodating the legislature's intent in adopting section 287.040.1—to prevent employers from avoiding their duties under the Act by contracting out work that their employees would normally do," while at the same time avoiding "sweeping within its reach specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees." *Id.*

In this case, the trial court found that the installation of displays is routinely done at Home Depot, and they are replaced on a regular and frequent schedule. The court further found that the Home Depot–Eveready agreement contemplates that the work will be repeated over a relatively short time period, and that, if not performed by Eveready or its agents, Home Depot would have needed to perform the work with its own employees. Based on these findings, the trial court concluded that Mr. Rubio was a statutory employee of Home Depot.

The very limited documentation and evidence the trial court had before it consisted of the Petition, Answer, the Motion to Dismiss, and numerous legal memos from both parties arguing legal issues. In addition, there are a total of seven short affidavits; a one page "Vendor Buying Agreement" between Home Depot and Eveready; an undated and unsigned twenty-five page document or manual designated "The Home Depot Vendor Buying Agreement Terms and conditions of doing business with The Home Depot," identified by counsel for Home Depot as the "New Vendor Information Packet"; a one page document styled "Vendor In-Store Responsibilities" between Home Depot and Eveready; and several documents relating to Mr. Rubio's Workers' Compensation claim in Texas, as well as Home Depot's election to opt out of Workers' Compensation in Texas, that are not relevant to the instant discussion.

As will be discussed *infra*, the trial court's findings, to the extent they are supported by the record at all, are almost entirely dependent upon the one page document styled "Vendor In-Store Responsibilities," between Home Depot and Eveready. However, that document is not probative of the issues in this case. While it lists "Eveready Battery Co." as the vendor and reflects an effective date of "3/23/93," it specifies that it is for the "West Coast" region. There is nothing in any of the affidavits or other exhibits, or even the suggestions for that matter, that in any way suggests that the Bannister Road Store # 3016 is or was in the West Coast region. And, while there is nothing of record to tell us what area the "West Coast" region encompasses, it cannot reasonably be inferred that the Kansas City, Missouri metro area is part of it.[3] More-

---

3. The affidavit of Jay Setnicka, an Eveready employee, states that "Eveready contracted with Pro Marketing, Inc. to set up product displays in new Home Depot Stores in the

over, the nature of the document is such that it precludes an inference that it applies in all regions or divisions in that it contains some thirty-five options that are included or excluded from the agreement depending on whether they are checked or unchecked, or marked "yes" or "no." Accordingly, the exhibit is not probative of the issues before us and, to the extent the trial court relied upon it in making its findings and reaching its decision, it erred.

We now turn to the trial court's findings and whether they are supported by the other documentation in the record. First, the court found that installation of displays is routinely done at Home Depot. The only matters of record remotely supporting this finding are the affidavit of Billy Bastek, a Home Depot employee, and the "New Vendor Information Packet." The affidavit states that when vendors are not required to set up product displays in new Home Depot stores, Home Depot employees regularly and routinely perform these tasks. The "New Vendor Information Packet," under "Vendor Service," provides that Home Depot requires vendor service, including "[a]ssisting in new store set-ups, [and] assisting existing stores in re-sets."

Assuming that "set-ups" and "re-sets" refer to setting up product displays, the only thing the packet prescribes is that vendors "assist" in that process. It says nothing about displays being routinely installed at Home Depot. And the Bastek affidavit contains nothing more than the assertion that if vendors do not set up displays in new Home Depot stores being prepared for opening, then Home Depot employees set up displays in new Home Depot stores. The best that can be said based on this affidavit is that displays are set up by vendors or employees when new Home Depot stores are preparing to open. This is quite different than saying that installation of displays at Home Depot is a routine part of its business.

The trial court next found that displays at Home Depot are replaced on a regular and frequent schedule and that the Vendor Buying Agreement between Home Depot and Eveready contemplates that the work will be repeated over a relatively short time period. There is nothing in the record before us having probative value on the issues in this case that supports such findings. Apparently referring back to the findings that displays are routinely installed and regularly and frequently replaced at Home Depot, the trial court further found that if the work had not been performed by Mr. Rubio, Home Depot would have needed to perform the work with its own employees.

As was the case with the referenced findings and noted in our prior discussion, this finding is overly broad. The only thing of record tending to support this finding is Mr. Bastek's affidavit stating that when vendors are not "contractually

Midwest Division from July 1999 to June 2000," and that "[s]tore # 3016 was a new Home Depot store location added to the Midwest Division during late 1999." It is unclear, but it appears the Midwest Division referred to by Mr. Setnicka is Eveready's Midwest Division. "The Home Depot Vendor Buying Agreement Terms and conditions of doing business with The Home Depot" (also referred to as the "New Vendor Information Packet") lists four divisional merchandising offices, the Mid–Southern, Southern, North-

eastern and the "Western division ... located in Fullterton, California, ... [which] is responsible for all stores west of Texas." The same document suggests that Missouri would fall into the Northeastern division. The "Vendor Buying Agreement" entered into by Home Depot and Eveready lends some credibility to this in that at the top of the document, beneath the caption, the words "Mid–Southern," "Southern," "Northeastern," and "Western" appear with boxes for check marks next to each.

obligated to set up product displays in new Home Depot stores, Home Depot employees regularly and routinely perform these tasks." Thus, the Bastek affidavit only supports the finding that Home Depot employees regularly and routinely set up product displays in *new Home Depot Stores* when vendors are not required to do so. The distinction is obvious. Home Depot's usual business is not the opening of new stores, but the operation of Home Depot stores.

Thus, we do not find the trial court's findings, upon which it determined that Mr. Rubio was Home Depot's statutory employee, to be supported by the record. To the contrary, the limited record before us does not establish that Mr. Rubio's work in setting up a display in a soon to be opened Home Depot store was, in the words of the *Bass* Court, anything more than "specialized or episodic work that [was] essential to [Home Depot] but not within [Home Depot]'s usual business." *Bass*, 911 S.W.2d at 621.

Applying the four factors identified by the *Bass* Court in defining "usual business," we look first to whether the activity in which Mr. Rubio was engaged is routinely done, on a regular and frequent basis. Mr. Rubio was at the Home Depot store for a day or two; he was involved in the one-time set-up of a battery display, and after this work was completed, he had no intention to ever return. He drove to the store in a van owned by ProMarketing, he used tools owned by ProMarketing, and no one at Home Depot controlled his work or his schedule. Home Depot never directly requested work from ProMarketing; ProMarketing's services were requested by Eveready under a separate contract that is not a part of the record in this case. The only thing known about that contract is from the affidavit of Jay Setnicka, an Eveready employee, who stated that "Ev-

eready contracted with Pro Marketing, Inc. to set up product displays in *new* Home Depot stores in the Midwest Division from July 1999 to June 2000" and that "Store #3016 was a *new* Home Depot store location added to the Midwest Division during late 1999." (emphasis added). Thus, the work being done was not the setting up, stocking, and continuously re-stocking of a product display in the course of Home Depot's day-to-day business. Rather, it was the one-time set-up and stocking of a display in a *new* Home Depot store, and the record certainly contains nothing that even hints at how regularly or frequently Home Depot opens a new store, much less that supports a finding that opening new stores is Home Depot's usual business.

Thus, it cannot be said that the work being performed by Mr. Rubio pursuant to his employment by ProMarketing was a routine, regular, or frequent part of Home Depot's business. Nor can it be said based on this record that the Vendor Buying Agreement entered into by Eveready with Home Depot contemplates that the work Mr. Rubio was performing would be repeated over a relatively short period of time. As noted, there is nothing in the record reflecting how many or how often new stores are opened. Moreover, the Vendor Buying Agreement doesn't even require Eveready to set up displays in new Home Depot stores; it merely states that Home Depot requires vendors to "[a]ssist[ ] in new store set-ups." So it can hardly be said that the Agreement contemplates that the work in question would be repeated in a short period of time.

To summarize, the record does not support a finding that the activities performed by Mr. Rubio at the time he was injured were in the course of Home Depot's "usual business" as used in § 287.040. The record contains no evidence that the work per-

formed by Mr. Rubio was anything more than infrequent, "specialized or episodic work that is essential to the employer but not within the employer's usual business." *Bass*, 911 S.W.2d at 621.

The instant case is very similar to *Tullmann v. St. Louis Science Center Foundation*, 34 S.W.3d 860 (Mo.App. E.D.2001). In *Tullmann*, the plaintiff sustained a slip and fall injury on a science center's premises. *Id.* at 861. The science center was generally involved in displaying various exhibits and attractions for public viewing. *Id.* Mr. Tullmann, plaintiff (and appellant) in that case, was employed with a company that periodically built and tore down the exhibits displayed at the science center. *Id.* There was no written agreement between the science center and Mr. Tullmann's employer for the work Mr. Tullmann was assigned to perform. *Id.* Mr. Tullmann and his wife sought to sue the science center in a civil case under a theory of negligence, and the trial court dismissed for lack of subject matter jurisdiction based on the same defense at issue in this case. *Id.*

The *Tullmann* court reversed the trial court, holding that Mr. Tullmann was not a statutory employee of the science center. *Id.* at 862. In so doing, it stated that "[a]lthough removing and building exhibits is a routine activity completed at [the science center]," there was no agreement between the science center and Mr. Tullmann's employer, and there was no evidence of a *"regular and frequent schedule"* of the science center's activities in removing and building exhibits. *Id.* (emphasis added). "Instead, the [science center] only called [Mr. Tullmann's employer] sporadically, and [Mr. Tullmann's employer] would create a work order for each job that the [science center] requested it to perform." *Id.*

Similarly, in the case *sub judice*, there is no agreement between Home Depot and ProMarketing, and the agreement between Home Depot and Eveready does not *require* Eveready to set up displays in new Home Depot stores. We know nothing of the contents of Eveready's contract with ProMarketing, other than that ProMarketing agreed to set up displays in Home Depot's new stores in the Midwest Division between July 1999 and June 2000, when, and if, Eveready chose to set up such displays since it was not contractually required to do so. And again, there is no factual evidence supporting a "regular and frequent" schedule for setting up battery displays in this new store, or in new stores in general, nor can it be said that it was contemplated by the agreement with Eveready.

For the foregoing reasons, the trial court erred in finding that Mr. Rubio was Home Depot's statutory employee and in dismissing the Rubios' action against Home Depot for lack of subject matter jurisdiction. Since Mr. Rubio was not Home Depot's statutory employee and is able to maintain a civil action against Home Depot irrespective of the choice of law question of whether the Missouri or Texas workers' compensation law applies, we need not address the Rubios' Point II.

The trial court's judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.