

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| ROBBY SEBACHER, | ) | No. ED108615 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable John D. Warner, Jr. |
| MIDLAND PAPER COMPANY, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 13, 2020 |

Appellant Robby Sebacher appeals the entry of summary judgment in favor of Respondent Midland Paper Company ("Midland") as to Sebacher's negligence claim arising out of an alleged assault by one of its employees. Sebacher contends the circuit court erred in concluding Midland was Sebacher's statutory employer and that his negligence claim was therefore barred by the exclusive-remedy provisions of the Missouri Workers' Compensation Law (the "Act"). The judgment is affirmed.

**Factual and Procedural History**

Midland is a distributor of paper and packaging supplies and has 18 warehouse distribution centers throughout the Midwest. Midland's Hazelwood, Missouri, warehouse is the only location where the delivery of Midland's products has been regularly contracted out to independent

contractors, who deliver the products instead of Midland's own employees.[1]  At that warehouse, Midland's products are delivered by CRH Transportation ("CRH"), which has routinely provided transportation services on a daily basis ever since Midland began using the warehouse in 2015. Sebacher was employed by CRH as a truck driver and worked full-time delivering Midland's products pursuant to its contract with CRH.

The contract required CRH to provide "Department of Transportation certified drivers" who are drug screened and have a valid commercial driver's license "to operate vehicles owned or leased by Midland."  The contract stated that all drivers were "the sole employees of CRH," which was responsible for hiring, termination, record keeping, and maintaining workers' compensation insurance.  Midland was responsible for "daily supervision and training" of drivers.  The contract required a "40 hour minimum per week per driver throughout the length of the [one year] agreement," and CRH was to submit weekly invoices to Midland.

Sebacher was allegedly assaulted by one of Midland's employees, Bruce Winckel, while at Midland's Hazelwood warehouse.  He filed a petition against Winckel and Midland, asserting claims of assault and battery against Winckel and alleging Midland was negligent in failing to supervise and train Winckel and in retaining him as an employee.  In its answer, Midland asserted an affirmative defense that it was immune from suit in that the Act was Sebacher's exclusive remedy since Midland was his statutory employer.  Midland filed a motion for summary judgment on that basis, and the circuit court granted the motion.  Sebacher voluntarily dismissed his claims against Winckel and now appeals the entry of summary judgment in favor of Midland.

---

[1] In response to this assertion in Midland's Statement of Uncontroverted Material Facts, Sebacher stated, "Plaintiff does not have sufficient information to form a belief about the truth or falsity of this statement, and therefore denies." He then stated that, with respect to the Hazelwood warehouse, Midland "only contracts with transportation companies to deliver its products to customers."  This response was insufficient to controvert the statement of fact, which is therefore deemed admitted for purposes of the motion. *See* Rule 74.04(c)(2); *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr., Inc.*, 430 S.W.3d 274, 283 (Mo. App. S.D. 2014).

**Standard of Review**

"Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). In considering an appeal from the circuit court's entry of summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Review on appeal "is essentially de novo." *Id.* "The propriety of summary judgment is purely an issue of law." *Id.*

**Discussion**

In his sole point on appeal, Sebacher argues the circuit court erred in granting Midland's motion for summary judgment because Midland was not his statutory employer. We disagree.

The Act is the exclusive remedy for an employee for injuries covered by its provisions. Section 287.120.2;[2] *Richter v. Union Pac. R. Co.*, 265 S.W.3d 294, 300 (Mo. App. E.D. 2008). Section 287.040.1 defines a statutory employer:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

"The General Assembly adopted section 287.040 to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995). "It

---

[2] All statutory references are to RSMo 2017, unless otherwise indicated.

does so by defining the company that hires the independent contractor as a statutory employer." *McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 480 (Mo. banc 2009). "This allows an injured employee to recover workers' compensation from the company if injured, just as if the work had not been farmed out to an independent contractor." *Id*.

"Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass*, 911 S.W.2d at 621. "The party asserting the existence of statutory employee status bears the burden of proving that the injured person was a statutory employee of the purported statutory employer." *McCracken*, 298 S.W.3d at 480. We strictly construe the provisions of the Act pursuant to section 287.800. *Peters v. Treasurer of Mo.*, 404 S.W.3d 322, 324 (Mo. App. E.D. 2012).

"One is a statutory employee if (1) the work is performed pursuant to a contract, (2) the injury occurs on or about the premises of the alleged statutory employer and (3) the work is in the usual course of the alleged statutory employer's business." *McCracken*, 298 S.W.3d at 480 (citing *Bass*, 911 S.W.2d at 619-20). The parties do not dispute that Sebacher performed the work pursuant to a contract and that his injury occurred on Midland's premises. The issue is whether Sebacher was performing work within the usual course of Midland's business.

The Supreme Court of Missouri has "defined 'usual business' as 'those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.'" *McCracken*, 298 S.W.3d at 480 (quoting *Bass*, 911 S.W.2d at 621). "This definition is designed to exclude 'specialized or episodic work that is

4

essential to the employer but not within the employer's usual business as performed by its employees.'" *Id*. (quoting *Bass*, 911 S.W.2d at 621).

Here, it is clear Sebacher was performing the usual business of Midland at the time of his alleged injury. The undisputed facts demonstrate that Sebacher was at the Hazelwood warehouse to pick up Midland's products for delivery. This work, which was contemplated by the contract between Midland and CRH, was routinely performed on a daily basis. The contract also contemplated the delivery services would be repeated over a relatively short period of time (a "40 hour minimum per week per driver throughout the length of the [one year] agreement") and that CRH would submit weekly invoices to Midland. Finally, Midland established through the affidavit of its director of human resources that "[i]f CRH drivers such as [Sebacher] were not performing the transportation services for Midland, Midland's own employees would have to provide the transportation, as they do at other Midland warehouse distribution centers."[3]

Sebacher contends that only the location where the injury occurred should be considered in determining the usual business of an alleged statutory employer. He stresses that section 287.040.1 is limited to the "usual business *which he there carries on*" and argues that a strict construction of the statute requires that only Midland's Hazelwood warehouse—and not Midland's 17 other warehouses—be considered in determining Midland's usual business. Section 287.040.1 (emphasis added). According to Sebacher, delivering products was not Midland's usual business at its Hazelwood warehouse because it had never used its own employees to perform the work at that location.

---

[3] This quote from the affidavit formed the basis for an assertion in Midland's Statement of Uncontroverted Material Facts. Sebacher responded, "Denied. Midland has . . . multiple options to deliver its products to its customers including contracting with other transportation companies." Because Sebacher failed to controvert this statement of fact with specific references to the record as required by Rule 74.04(c)(2), we take the factual assertion as true for summary judgment purposes. *See Peck v. All. Gen. Ins. Co.*, 998 S.W.2d 71, 75 (Mo. App. E.D. 1999).

The Court notes that our Supreme Court reaffirmed the four-part definition of "usual business" in *McCracken* after section 287.800 was amended to require strict construction. *McCracken*, 298 S.W.3d at 480. In any event, it is not necessary for the Court to decide whether section 287.040.1 is limited to the specific location where a plaintiff is injured because Sebacher was performing the usual business of Midland even if only the Hazelwood warehouse is considered. Midland is a distributor of paper and packaging supplies. Its usual business at all of its warehouse distribution centers, including the Hazelwood facility, is to distribute and deliver its products to its customers. The mere fact that Midland accomplishes the deliveries from the Hazelwood warehouse by using independent contractors instead of regular employees in no way changes the usual business at that warehouse. And, as noted, Midland established that if CRH was not performing this work at the Hazelwood warehouse, then Midland's own employees would have to do the work. Again, section 287.040.1 is designed "to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass*, 911 S.W.2d at 619. The position advocated by Sebacher—that the exclusive use of independent contractors at a facility takes those workers outside the bounds of statutory employment—would defeat the purpose of the statute.

Sebacher also broadly asserts that "product delivery is the type of specialized work that is excluded from the usual course of business of a putative employer." He relies on *McCracken*, where the plaintiff was a delivery driver for IBC, a supplier that produced and delivered bread products to certain Wal-Mart stores. *McCracken*, 298 S.W.3d at 475. After being injured during a delivery, the plaintiff sued Wal-Mart. The court held Wal-Mart was not his statutory employer, noting that the plaintiff's "role was to equip Wal-Mart for business, not to engage in its business

6

himself." *Id*. at 481. The court concluded the bread delivery was episodic and specialized work that was essential to Wal-Mart but not part of its usual business. *Id*.

The present case, however, does not involve a delivery driver for a supplier arriving to equip a buyer for business. Instead, Sebacher was clearly carrying out Midland's usual business at its Hazelwood warehouse—he was picking up products from a distributor to deliver them for the distributor. Product delivery is indeed Midland's usual business.

Sebacher also asserts that because the contract required CRH to provide "Department of Transportation certified drivers" who are drug screened and have a valid commercial driver's license, the act of driving is specialized work not within Midland's usual business. But Sebacher fails to explain why driving should be considered so specialized as to be considered outside of the usual business of a distributor. "[T]he performance of routine, frequent, and regular contractual duties is within the usual business of the employer and falls under the coverage of the Act." *Bass*, 911 S.W.2d at 618; *see also McCracken*, 298 S.W.3d at 480. Here, the contract between Midland and CRH required routine truck driving services on a regular daily schedule. The contract's requirements regarding CRH's drivers did not make Sebacher's work so specialized that it was not part of Midland's usual business.

Because Midland was Sebacher's statutory employer, the circuit court did not err in entering summary judgment in favor of Midland. Sebacher's point on appeal is denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

_____
MICHAEL E. GARDNER, Judge

Gary M. Gaertner, Jr., P.J., concurs.
Philip M. Hess, J., concurs.

7