William MILLER, Respondent,

v.

AMERICAN ROYAL ASSOCIATION and American International Group, Appellants,

Harry Vold Rodeo, Defendant,

and

Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.

No. WD 62507.

Missouri Court of Appeals, Western District.

April 6, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 2004.

Application for Transfer Denied Aug. 24, 2004.

Eric T. Lanham, Robert J. Wonnell, Kansas City, KS, for Appellant/Employer American Royal Association.

Jerry Kenter, Kansas City, MO, for Respondent Miller.

Tamara J. Anfang, Asst. Atty. Gen., Kansas City, MO, for Respondent Second Injury Fund.

Before: BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

The American Royal Association (the American Royal) appeals from a temporary or partial award of the Labor and Industrial Relations Commission (the

Commission), in which the Commission declared that, pursuant to section 287.040.1,[1] the American Royal was a statutory employer of William Miller when he was injured on October 27, 2000.

Because the work being performed by Mr. Miller when he was injured was not an operation of the "usual business" of the American Royal, the American Royal is not liable to Mr. Miller as a statutory employer, so we reverse the Commission's award.

## Background

The American Royal is a not-for-profit organization with the primary goal of providing agricultural education to children and adults in the Kansas City region. To accomplish this goal and raise funds to support the organization, every fall the American Royal organizes a large show in Kansas City at Kemper Arena. This show consists of a variety of events including but not limited to: a barbeque, a livestock show, a rodeo, a parade, horse shows, concerts and other attractions that sometimes vary from year to year.

In the fall of 1998 and 1999 and the spring of 2000, the American Royal hired William Miller to perform seasonal maintenance work during its fundraising events. In the fall of 2000, Mr. Miller again approached the American Royal's maintenance supervisor to inquire about employment.[2] This time, however, the supervisor informed Mr. Miller that the American Royal would not hire him because he was not a reliable employee and had damaged some expensive equipment during his previous seasonal employment. The supervisor suggested Mr. Miller speak with the

---

1. Statutory references are to RSMo 2000.

2. The evidence showed that every year a large number of people would "hang around" Kemper in hopes of obtaining employment

with the American Royal, which would generally hire about thirty people for general maintenance work during the events.

owner of the Harry Vold Rodeo, which contracted with the American Royal to produce the rodeo portion of its show, about obtaining employment with the rodeo.

Mr. Miller then spoke to Harry Vold's daughter, who hired Mr. Miller to work during the rodeo event. She assigned Mr. Miller to organize and load livestock for the show, for which he would receive $10 per performance. On October 27, 2000, Mr. Vold's daughter told Mr. Miller to wait until the end of the roping event to begin his duties. As Mr. Miller went to his designated spot, he climbed over a roping box or chute, where a lady's foot hit him in the forehead, causing him to fall inside the box. Although he did not feel immediate pain, Mr. Miller later felt that he injured his right hand or wrist when he fell. He went to a portable sports medicine trailer at the event, where he had his hand iced down and wrapped.

The following week, Mr. Miller saw Dr. Thomas Phillips, an orthopedic surgeon in Kansas City. X-rays did not reveal any problems, but Dr. Phillips put a cast on Mr. Miller's hand for one month. After the cast was removed, Mr. Miller continued to have pain. Once again, x-rays revealed nothing. An MRI was also inconclusive due to Mr. Miller's size. Dr. Phillips recommended an open MRI, but Mr. Miller could not afford it. Dr. J. Michael Smith, who also evaluated Mr. Miller, likewise opined that an open MRI "would be very helpful in determining what, if any, bone or ligamentous injury exists."

Mr. Miller filed a workers' compensation claim against Harry Vold Rodeo and the American Royal. Harry Vold Rodeo, as Mr. Miller's direct employer, did not an-swer the claim or participate in the proceedings, so it was held liable in default. The American Royal, however, disputed its liability as a direct or statutory employer of Mr. Miller. The Administrative Law Judge (ALJ) agreed with the American Royal, concluding the rodeo was neither a direct nor statutory employer of Mr. Miller.[3] Specifically, the ALJ held that the work performed by Mr. Miller for the rodeo was not part of the "usual business" of the American Royal "because it is not a frequent event and the American Royal would not be forced to hire permanent employees in the absence of the rodeo." Thus, the American Royal was not liable for the injuries sustained by Mr. Miller while doing work for the rodeo.

Mr. Miller filed an application for review of the ALJ's decision with the Commission. A majority of the Commission "acknowledge[d] this is a close case" and found the American Royal to be the statutory employer of Mr. Miller. It reversed the ALJ's final award and issued a "Temporary or Partial Award," ordering the American Royal and its insurer to "provide the diagnostic testing recommended by Dr. Smith and to provide such medical care as is necessary to cure and relieve [Mr. Miller] from his injury." This appeal follows.

### Jurisdiction

The Commission specifically provided that its "award is only temporary or partial, is subject to further order and the proceedings are hereby continued and kept open until a final award can be made. All parties should be aware of the provisions of § 287.510." We must first determine whether this court has jurisdiction.

---

3. There is no dispute that the American Royal was not a direct employer of Mr. Miller, so we do not discuss the issue further.

Generally, "no appeal lies from a temporary or partial award made pursuant to section 287.510. An order lacks finality where, as here, it expressly remains tentative, provisional, contingent subject to recall, revision or reconsideration by the issuing agency." *Forkum v. Arvin Indus., Inc.*, 956 S.W.2d 359, 362 (Mo.App. S.D.1997) (citations omitted). "A well-recognized exception, however, allows us to review the issue of liability when an employer claims that it is not liable for the payment of compensation." *Marston v. Juvenile Justice Ctr. of the 13th Judicial Circuit*, 88 S.W.3d 534, 536 (Mo.App. W.D.2002) (citing *Korte v. Fry–Wagner Moving & Storage Co.*, 922 S.W.2d 395, 398 (Mo.App. E.D.1996)). The American Royal claims that it is not liable to Mr. Miller as a statutory employer. This grants us jurisdiction.

### Section 287.040.1—Statutory Employer

The sole issue in this case is whether the American Royal was a statutory employer of Mr. Miller in accordance with section 287.040.1, which provides:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

In *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995), our supreme court explained, "[t]he General Assembly adopted section 287.040 to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform." The

court concluded that the statute clearly provides: "statutory employment exists when three elements co-exist: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer." *Id.* at 619–20.

### Discussion

The Commission held that the three elements of a statutory employment were satisfied in this case and declared the American Royal to be a statutory employer of Miller. On appeal from that decision, the parties agree the first two elements of statutory employment are not in issue, so we do not further consider those elements. Rather, the American Royal's three points on appeal each focus on the third "usual business" element. Because all three elements must co-exist, if the third element is not met, i.e., if the work being performed by Mr. Miller when he was injured was not an operation of the "usual business" of the American Royal, then the American Royal is not liable to Miller as a statutory employer. As explained below, we agree with the American Royal that the third element was not satisfied, so it is not liable as a statutory employer.

The *Bass* court defined a putative employer's "usual business" as used in section 287.040.1 as:

> those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Id.* at 621; *see also State ex rel. MSX Int'l, Inc. v. Dolan,* 38 S.W.3d 427, 429 (Mo. banc 2001) (applying this definition of "usual business"). In its three points relied on, the American Royal argues the work performed by Mr. Miller for the rodeo was not "an operation of the usual business which [the American Royal] there carries on" under section 287.040.1 in that: (1) the rodeo that takes place at the American Royal is not performed on a regular and frequent schedule nor routinely done; (2) the agreement between the American Royal and Harry Vold Rodeo for the conduct of a rodeo was to be completed over a relatively short span of time; and (3) the American Royal would not have been required to hire permanent employees had Harry Vold Rodeo not put on the rodeo. As explained below, his third point is dispositive.

■ The parties disagree about whether the work being done by Mr. Miller for Harry Vold Rodeo is an operation of the "usual business" of the American Royal, but the relevant facts are not in dispute. Where "the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass,* 911 S.W.2d at 621. In so reviewing, we keep in mind that we must "give the Act a liberal reading, deciding close cases in favor of workers' compensation coverage." *Id.*

Even when we liberally construe the Act, as we must, we conclude that the rodeo was not an operation of the "usual business" of the American Royal; it would not have been required to hire permanent employees had Harry Vold Rodeo, its contractor and direct employer of Mr. Miller, not agreed to manage the rodeo. Because the work Mr. Miller was doing for the rodeo was not part of the "usual business"

of the American Royal, it is not liable as a statutory employer under section 287.040.1.

As explained above in the background of this case, the American Royal Association is a not-for-profit organization with the primary goal of providing agricultural education to children and adults in the Kansas City region. To accomplish this goal and raise funds to support the organization, the American Royal organizes a large show each fall. This show consists of a variety of events and attractions including but not limited to: a barbeque, a livestock show, a rodeo, a parade, horse shows, concerts and other attractions that sometimes vary from year to year.

Mr. Miller was injured while getting ready to organize and load livestock into a chute for the rodeo event. Although the rodeo has been a part of the American Royal event for many years, it is not a typical function of, or something that the American Royal can produce on its own with its own employees. While the American Royal's own maintenance employees may sometimes clean up after the livestock or set some equipment up, those employees have nothing to do with the livestock or actual rodeo performances. Rather, because of the highly specialized knowledge and experience required to manage a rodeo, the American Royal contracts with Harry Vold Rodeo to manage that portion of the show.

Harry Vold Rodeo is a rodeo contractor approved by the Professional Rodeo Cowboys Association (PRCA), which, due to the specialized nature of rodeos, was established to sanction rodeos in the United States. Only rodeo contractors approved by the PRCA will be sanctioned to conduct a rodeo. The American Royal is not a PRCA-approved contractor, so, even if it could hire its own permanent employees with the specialized knowledge required to

operate a rodeo, it could not so conduct a rodeo without being in direct violation of the PRCA sanctioning rules.

In declaring the American Royal a statutory employer under section 287.040.1, the Commission, which acknowledged this was a "close case," focused in large part upon the fact that the rodeo had greatly contributed the financial success of the American Royal's fall show for many years. Its primary focus was upon the fact that the rodeo was an essential or integral part of the American Royal show. However, the *Bass* court expressly rejected the "essential/integral" test previously employed by some appellate courts. *Id.* at 621. Instead, the court chose to follow the more-narrow "routine/frequent" test in order to more closely accommodate the legislative intent of preventing employers from avoiding their workers' compensation duties by *contracting out work that their* employees would normally do. *Id.* While the rodeo may have been financially lucrative to or an integral part of the American Royal show, that is not the test. Rather, after consideration of the precedent applying the routine/frequent analysis and the legislature's purpose in adopting section 287.040.1, the *Bass* court defined "usual business" to encompass:

> those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Id.*

Under the circumstances of this case, without Harry Vold Rodeo, for whom Mr. Miller was preparing to load livestock when he was injured, or some other PRCA-sanctioned rodeo contractor, the American Royal would not have held the rodeo event portion of its event-filled show. The work being performed by Mr. Miller when he was injured is the type of "specialized or episodic work that is essential to [the American Royal] but not within [the American Royal's] usual business as performed by its employees" under section 287.040.1 that the *Bass* court specifically noted should not be "swe[pt] within [the] reach" of the legislature's intent in adopting section 287.040.1, i.e., "to prevent employers from avoiding their duties under the Act by contracting out work that their employees would normally do." *Id.* Absent the American Royal's agreement with Harry Vold Rodeo, the American Royal would not have to hire permanent employees to load livestock into chutes as Mr. Miller was assigned to do for the rodeo when he was injured; there would be no rodeo, so there would be no livestock to handle.

## Conclusion

Accordingly, the American Royal is not, as a matter of law, liable under section 287.040.1 as a statutory employer of Mr. Miller. The Commission's temporary or partial award, as it relates to the American Royal's liability is reversed.

BRECKENRIDGE, P.J., and EDWIN H. SMITH, J., concur.