Roger E. RICHTER, Appellant,

v.

UNION PACIFIC RAILROAD
COMPANY, et al.,
Respondent.

No. ED 90090.

Missouri Court of Appeals,
Eastern District,
Division One.

July 15, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 12, 2008.

Application for Transfer Denied
Oct. 28, 2008.

Ronnie L. White, Thomas E. Schwartz, St. Louis, MO, David L. Blunt, Paul Slocomb, Edwardsville, IL, for appellant.

Thomas E. Cook, Heath H. Hooks, Crystal M. Campbell, Belleville, IL, for respondent.

KENNETH M. ROMINES, Judge.

### *Introduction*

Roger Richter appeals from the judgment of the Circuit Court of the City of St. Louis dismissing his common law negligence claim against Union Pacific Railroad for injuries suffered when a chair he was using at work collapsed. The trial court further determined that it lacked authority to reinstate Richter's Federal Employers' Liability Act (FELA) claim after Richter had voluntarily dismissed with prejudice that count under Missouri Supreme Court Rule 67.02(a). Our decision as to the latter hinges on our interpretation of the words "a civil action" used in Rule 67, and we agree with the trial court that one count of a multi-count petition can indeed constitute a civil action. As regards Richter's common law negligence claim, we agree that the trial court properly dismissed the claim for lack of subject matter jurisdiction because Union Pacific was Richter's statutory employer. We affirm.

### *Factual and Procedural Background*

Respondent Union Pacific Railroad hired Michener–Gaines Associates in January 2002 to provide personnel to staff Union Pacific's Response Management Communications Center in St. Louis, Missouri. The contract between the two companies stated that while the employees of Michener–Gaines would work at Union Pacific's facility, Michener–Gaines would be responsible for supervision and all hiring and firing decisions concerning those employees. Additionally, the contract required Michener–Gaines to maintain workers' compensation and employers' liability insurance.

Appellant Roger Richter worked for Michener–Gaines as a communications specialist in Union Pacific's Response Management Communications Center. On 9 December 2003, while working at the center, Richter sat in a chair which unexpectedly collapsed, injuring his back and neck. Richter filed for and received workers' compensation benefits for this incident. Later, on 3 May 2004, Richter filed a petition in the Circuit Court of the City of St. Louis against both Union Pacific and Steelcase, Inc., the manufacturer of the chair that collapsed. Richter filed a Second Amended Petition on 6 February 2007, which included five counts: Count I against Union Pacific under the Federal Employers' Liability Act (FELA); Count II against Union Pacific alleging common law negligence; Count III a products liability claim against Steelcase; and Counts IV and V punitive damages claims against Union Pacific and Steelcase, respectively.

Following discovery, Union Pacific moved on 20 February 2007 to dismiss Counts I, II, and IV of Richter's petition. Richter filed a Memorandum in Opposition on 16 March 2007, and the parties met with Judge David on 19 March 2007. The court set a trial date of 9 April 2007, and stated it would hear argument on Union Pacific's Motion to Dismiss at that time. On 6 April, Richter filed a Notice of Dismissal, voluntarily dismissing his FELA claim *with prejudice*. The case was reassigned to Judge Riley, and on 9 April the parties appeared. At that time, they argued Union Pacific's motion to dismiss the remaining counts. The court took a recess in order to review the motion, during which time Richter filed a motion to withdraw his previous dismissal of his FELA count. When the court reconvened, it found that it had no jurisdiction to reinstate Richter's FELA claim because the court lost jurisdiction once Richter voluntarily dismissed the claim with prejudice. The court also granted Union Pacific's Motion to Dismiss, finding that Union Pacific was Richter's statutory employer and

therefore workers' compensation was Richter's exclusive remedy.

Richter raises two points on appeal. First, he argues that the trial court erred in concluding that Richter's voluntary dismissal of his FELA claim was effective under Rule 67.02 and the court lacked jurisdiction to reinstate it. Next, Richter argues that the trial court erred in finding that Union Pacific was Richter's statutory employer and thus erred in dismissing Richter's common law claims for lack of subject matter jurisdiction.

### Voluntary Dismissal Under Rule 67.02

#### Standard of Review

The interpretation of Rule 67.02 in this case is a purely legal question, and thus we review it *de novo*. *See Smith v. Kansas City S. Ry. Co.*, 87 S.W.3d 266, 271 (Mo. App. W.D.2002).

#### Discussion

■■■ Rule 67.02(a) provides that "a civil action may be dismissed by the plaintiff without order of the court anytime" prior to either the swearing in of the jury or the introduction of evidence at a bench trial. Once a plaintiff has voluntarily dismissed an action under this rule, it is as if the suit had never been filed. *State ex rel. Rosen v. Smith*, 241 S.W.3d 431, 432–33 (citing *Liberman v. Liberman*, 844 S.W.2d 79, 80 (Mo.App. E.D.1992)). Thus, the trial court has no power to reinstate a claim that has been so dismissed. *Liberman*, 844 S.W.2d at 80 (citing *Emigh Eng'g Co. v. Rickhoff*, 605 S.W.2d 173, 174 (Mo.App. E.D.1980)). Acting under this line of cases, the trial court found that it was without jurisdiction to reinstate Richter's FELA claim once he had voluntarily dismissed it with prejudice.

■■■ The key phrase at issue is "civil action." We must decide whether a volun-

tary dismissal of one count of a multi-count petition can qualify as dismissal of a "civil action" under Rule 67.02(a), requiring no court order. We hold that it can.

There is no Missouri case which has directly addressed the meaning of "civil action" for purposes of Rule 67.02(a). In fact, even a general definition of "civil action" is lacking in our precedent. In *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, our Supreme Court pointed out that the rules use various terms when referring to a lawsuit, including "claim," "cause of action," and "civil action." 989 S.W.2d 168, 172 (Mo. 1999). The court defined both "claim" and "cause of action" as nearly the same thing: a common group of operative facts giving rise to a lawsuit. *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo.2002) (quoting Black's Law Dictionary 1312 (7th ed.1999)). Both terms refer to the entire lawsuit, including separate legal theories. *Id.* Richter argues that the same definition applies to a "civil action," though no case has so held.

We interpret Supreme Court Rules using principles similar to those that guide our interpretation of state statutes. *State ex rel. Vee–Jay Contracting Co. v. Neill*, 89 S.W.3d 470, 471–72 (Mo.2002). We determine the intent of the Supreme Court by looking to the plain and ordinary meaning of the language in the rule. *Id.*; *State ex rel. USAA Cas. Ins. Co. v. David*, 114 S.W.3d 447, 448 (Mo.App. E.D.2003). In absence of statutory definitions, we may derive the plain and ordinary meaning from a dictionary and by considering the context of the entire statute in which it appears. *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 224 (Mo. banc 2007). In construing a statute, we also avoid an interpretation that would lead to oppressive, unreasonable, or absurd results. *Elrod v. Treasurer of Mo. as Custodian of*

*Second Injury Fund,* 138 S.W.3d 714, 716 (Mo. banc 2004).

First, *Chesterfield Village* cited Black's Law Dictionary for the definitions of "claim" and "cause of action," finding that they were quite similar. *Id.* However, Black's defines a "civil action" as "an action brought to enforce, redress, or protect a private or civil right." Black's Law Dictionary 32 (8th ed.2004). Under this definition, a civil action does not necessarily encompass all legal bases for suit arising from a common set of operative facts, as do the other terms. Furthermore, the cases above defined "claim" and "cause of action" in the context of the doctrine of *res judicata,* which rightly must apply to a common set of operative facts. None of the cases purported to establish a definition for those terms which applied beyond that context. And even if they do, the fact remains that "civil action" has not been defined.

Beyond the dictionary definition, we look to the context of the rule, which includes both the surrounding rules using the term "civil action," and the legal context: voluntary dismissal in previous cases, even before the existence of Rule 67.02. First, we construe a rule in harmony with surrounding rules. *State ex rel. Keeling v. Randall,* 386 S.W.2d 67, 68 (Mo.1964). Other rules make clear by their terms when all counts of a petition are included. Rule 51 refers to "the *entire* civil action" at least three times when prescribing the procedure for changing venue. Rule 51.04(a), (g); Rule 51.045(c) (emphasis added). Even within the context of Rule 67 it becomes clear that a "civil action" can

be one count: Rule 67.03 states that "a defendant may move for an involuntary dismissal of the civil action for lack of jurisdiction...." Certainly it is possible that a defendant would have a valid argument that the court lacks jurisdiction over one count yet not over the others. In that case, using Richter's interpretation of the rule, the defendant would have to move to dismiss all counts, undoubtedly in some instances forcing the defendant's motion to be frivolous as to some counts. This result is illogical; thus in our avoidance of reaching absurd results, we cannot hold Richter's interpretation of the rule to be correct.[1]

Additionally, the practice of a plaintiff dismissing one count of many in his petition was endorsed by our Supreme Court over a century ago. *See Holliway v. Holliway,* 77 Mo. 392, 397 (1883) (holding that "plaintiff was ... properly allowed to dismiss the second count" because it was "separate and distinct" from the first, despite arising from the same set of facts). We presume the Supreme Court was well-versed in its own precedent when it drafted Rule 67. Since then, many plaintiffs have voluntarily dismissed fewer than all of their initial claims, without disruption on appeal. *See, e.g., Leonardi v. Sherry,* 137 S.W.3d 462, 464–65 (Mo.2004) (civil defendant voluntarily dismissed his counterclaim for declaratory judgment, yet counterclaims for damages were still intact).

However, Richter urges that the only proper procedural route for a plaintiff to leave behind one count while maintaining the action on the rest is to file an amended

---

1. Richter argues the opposite, that our interpretation is illogical based on what the trial court did. He asks how, if the court no longer had jurisdiction over the claim, it had authority to grant a motion to dismiss. Richter misunderstands the court's action. The court did not dismiss Richter's FELA count. It determined it had no jurisdiction to reinstate it and denied Richter's motion to reinstate. The court did dismiss Richter's common law claim, and it had authority to do so separate from any action on Richter's FELA claim.

petition, citing *Shelter Mut. Ins. Co. v. Vulgamott,* 96 S.W.3d 96, 104 (Mo.App. W.D.2003). But *Shelter Mutual* is inapposite because it deals with a plaintiff's attempt to voluntarily dismiss one part of one count, rather than one entire count of a multi-count petition. 96 S.W.3d at 105. There is no Missouri case that makes the distinction Richter finds between voluntary dismissal and an amended pleading.

Therefore, Richter also points us to the federal counterpart to Rule 67.02(a), Fed. R.Civ.P. 41(a)(1)(A), which states, "an action may be dismissed by plaintiff without order of the court by filing notice of dismissal at any time before service by the adverse party of an answer or a motion for summary judgment, whichever occurs first, . . . ." Indeed, federal courts interpret the word "action" to apply only to entire lawsuits, holding that individual counts may not be voluntarily dismissed using this rule. *See, e.g., Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 518 (Fed.Cir. 1987); *Harvey Aluminum v. Am. Cyanamid Co.,* 203 F.2d 105, 108 (2d Cir.1953). In federal cases, plaintiffs must file amended petitions under Fed.R.Civ.P. 15 if they wish to discard one or more of their claims while keeping others intact. *E.g., Harvey Aluminum,* 203 F.2d at 108. However, the Federal Circuit has pointed out that in most cases, the procedural differences between a voluntary dismissal and an amendment to the pleadings are of no consequence. *Gronholz,* 836 F.2d at 518. The court goes on to explain that in some cases, the claim the plaintiff voluntarily dismisses could destroy federal jurisdiction. *Id. See also Hells Canyon Preservation v. U.S. Forest Serv.,* 403 F.3d 683, 688 n. 5 (9th Cir.2005). Therefore, federal courts hold that a plaintiff may not use Rule 41 to voluntarily dismiss only one count, and must instead use Rule 15 to amend the pleadings.

■ However, while federal interpretations of similar procedural rules can provide us illustrative and useful guidance; they are not controlling, even if the federal rule is nearly identical to Missouri's. *Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 820 (Mo.2000). In Missouri, the issue that compels the federal interpretation of "action" in Rule 41 is nonexistent. We can see no case in which voluntarily dismissing one count would procedurally destroy jurisdiction over the remaining counts. In fact, the procedural differences between voluntary dismissal and an amendment to the pleadings amount to little more than titular variation. Richter fails to persuade us that the federal interpretation of Fed. R.Civ.P. 41 is appropriate for Missouri's Rule 67.02(a).

Rule 67.02(a) exists for the convenience of plaintiffs; so that they may make choices in their prosecutions of lawsuits without having to procure court approval at such early stages of the proceedings. The rule also preserves judicial economy by allowing plaintiffs to withdraw cases without involving the court needlessly. Therefore, it is in keeping with the rule's purposes to allow a plaintiff to dismiss one count of his or her petition in the same way he or she could dismiss the whole petition. The key is that the dismissal comes early enough in the process that the court need not be involved. Here, Richter took advantage of the rule in order to proceed on only one claim, in keeping with the spirit of the rule and with its plain language. Furthermore, he dismissed his claim *with prejudice.* Now he asks us to create out of whole cloth a technicality where none exists. We decline to do so, and hold that a plaintiff may voluntarily dismiss one or more counts of a multi-count petition using Rule 67.02(a), and all the effects of such dismissal will attach. Point denied.

### Subject Matter Jurisdiction Over Common Law Claims

Richter's second point is that the trial court erred in finding that the court lacked jurisdiction over Richter's common law claim because Richter was the statutory employee of Union Pacific. The Missouri Workers' Compensation Law is employees' exclusive remedy for injuries covered by its provisions. § 287.120.2 RSMo. (2000)[2]; *State ex. rel Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002). Jurisdiction for such claims lies solely with the Labor and Industrial Relations Commission. *Taylor*, 73 S.W.3d at 621. A motion to dismiss for lack of subject matter jurisdiction is the proper way to raise the defense of workers' compensation. *State ex rel. McDonnell Douglas Corp. v. Ryan*, 745 S.W.2d 152, 153 (Mo.1988).

### Standard of Review

The court's ruling on subject matter jurisdiction we review for abuse of discretion, unless the facts were uncontested and it is purely a question of law. In the latter case, we review the ruling *de novo*. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. 2003). Whether the facts the trial court found fit the legal definition of statutory employment is a question of law. *Fisher v. Bauer*, 239 S.W.3d 693, 698 (Mo.App. E.D.2007). Thus, we defer to the factual findings of the trial court but review its legal conclusions as to the existence of statutory employment *de novo*.

### Discussion

At issue is whether Richter was the statutory employee of Union Pacific, thus limiting his remedy to that provided in the Workers' Compensation Law. There are three elements of statutory employment: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of the business of the alleged statutory employer. § 287.040.1; *Augur v. Norfolk S. Ry. Co.*, 154 S.W.3d 510, 515–16 (Mo.App. W.D.2005) (citing *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619–20 (Mo. banc 1995)). A movant must show each of these elements by a preponderance of the evidence in order for the court to dismiss based on lack of subject matter jurisdiction. *See* Rule 55.27(g); *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267, 269 (Mo.2007). Additionally, the workers' compensation act as a whole is to be liberally construed with a view to the public welfare, and in instances where jurisdiction is in doubt, it should be held in favor of the Labor and Industrial Relations Commission. *State ex rel. MSX Intern., Inc. v. Dolan*, 38 S.W.3d 427, 429 (Mo.2001) (citing *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995)). Neither party disputes that a contract existed between Richter and Union Pacific. Therefore, we discuss the remaining two elements in turn.

### 1. Premises

The second element of statutory employment is that Richter's injury must have occurred on or about the premises of Union Pacific. We give the term "premises" a liberal construction, not limiting it only to premises fully owned by the alleged employer or on which its permanent place of business is located. *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267, 271 (Mo.2007). Rather, "premises" contemplates "any place under the exclusive control of the statutory employer where his usual business is being carried

**2.** All statutory references are to RSMo. (2000) unless otherwise indicated.

on or conducted." *Boatman v. Superior Outdoor Advertising Co.*, 482 S.W.2d 743, 745 (Mo.App.1972). This includes places under the employer's exclusive control only temporarily by virtue of the work being done. *Id.* "Exclusive control" means that the statutory employer exercises a control over the premises that the general public does not share with the employer and the independent contractor. *Id.; Midkiff*, 222 S.W.3d at 272. We also give the phrase "on or about" a liberal construction. *Sargent v. Clements*, 337 Mo. 1127, 88 S.W.2d 174, 178 (1935).

Richter argues essentially that because Michener–Gaines was an independent contractor and was Richter's direct employer, Michener–Gaines exercised exclusive control of the premises and Union Pacific did not. However, our Supreme Court has pointed out that there is no limitation as to the number of statutory employers that an employee may have. *State ex rel. MSX Intern., Inc. v. Dolan*, 38 S.W.3d 427, 430 (Mo. banc 2001). The fact that Richter seemingly concedes Michener–Gaines qualifies as his statutory employer does not eliminate the possibility that Union Pacific also could be. In *Dolan*, MSX was a general contractor hired by Chrysler to manufacture parts. 38 S.W.3d at 429. MSX hired LMS to provide manufacturing workers. *Id.* The work took place at MSX's facility, and MSX provided the equipment; however, LMS hired the employees. *Id.* The court found that MSX was the statutory employer of the injured worker. *Id.* at 430. Similarly, in *McGrath v. VRA I Ltd. P'ship*, VRA owned an apartment complex and hired Interstate Property Services to manage the apartments. 244 S.W.3d 220, 222 (Mo. App. E.D.2008). A maintenance worker, hired by Interstate, was injured while performing his duties at the apartment complex, and the court found that he was the statutory employee of VRA. *Id.* at 224.

Here, as in the precedents cited above, though Richter was not hired by Union Pacific, he was performing the duties Union Pacific had hired Michener–Gaines to perform, and he was doing so on the premises contemplated in the contract: Union Pacific's Response Management Communications Center. He has made no showing that the general public had access to the premises on which he worked. *See Fisher v. Bauer Corp.*, 239 S.W.3d 693, 700 (Mo. App. E.D.2007) (citing *Boatman v. Superior Outdoor Advertising Company*, 482 S.W.2d 743, 745 (Mo.App.1972)).

Richter relies on *Midkiff* to argue that Michener–Gaines is the statutory employer, rather than Union Pacific. *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267 (Mo.2007). However, in *Midkiff*, the employee sued his direct employer, MW Builders, Inc., who the court found to be an independent contractor and thus was a statutory employer under § 287.040.3. *Id.* at 271. Far from concluding that the owner of the premises, Northwest Missouri State University, was not the statutory employer of the injured worker; the court did not even consider that issue. Therefore, this case does not affect our conclusion that Richter was injured on the premises of Union Pacific.

Richter further uses the contract between the parties to argue that Union Pacific did not control the premises. The contract states that Michener–Gaines would provide all materials, and that Union Pacific would "have no control over the employment, discharge, compensation of and service rendered by [Michener–Gaines]'s employees or agents." This does not have bearing on whether Union Pacific retained control over the premises to a degree that satisfies the second element of statutory employment. We find, as did the circuit court, that because the general

public did not have the same access to the premises that Union Pacific did, and because Richter was injured on the property on which he was to perform his work pursuant to the contract, the Response Management Communications Center qualifies as the premises of Union Pacific for purposes of statutory employment in this case.

### 2. Usual Course of Business

 Finally, the third element of statutory employment is that the employee's work must be in the usual course of business of the alleged statutory employer. Historically, cases interpreting this element fell into two categories: cases defining "usual course of business" as those activities essential and integral to a company's business, and cases focusing on the routine and frequent nature of the activities performed. *See Bass v. Nat'l Super Mkts., Inc.,* 911 S.W.2d 617, 620 (Mo.1995) (citing cases). In reconciling these two lines of cases, our Supreme Court noted that the former test comes largely from older cases and is less closely-accommodating of the legislature's intent in adopting § 287.040.1. *Id.* at 621. Therefore, the court defined "usual course of business" for purposes of this section as "those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." *Id.*

Richter was a term employee, performing his tasks on a daily basis. The contract was for approximately two years, and it contemplated that Michener–Gaines would staff Union Pacific's Response Management Communications Center. Richter's employment as a communications specialist fulfilled the contemplated agreement. Union Pacific would certainly have had to fill Richter's position with one of its own employees had it not hired Michener–Gaines to do so. Richter argues that the services he provided were merely ancillary to Union Pacific's business as an interstate common carrier, but in cases since *Bass,* courts place much less emphasis on the nature of the work than the nature of the agreement and the time frame under which it was performed.[3] Therefore, because Richter's employment meets the four elements laid out in *Bass,* we conclude that his work was in the usual course of Union Pacific's business. Point denied.

### *Conclusion*

One count of a multi-count petition qualifies as "a civil action" under Rule 67.02(a),

---

**3.** Cases finding statutory employment, even when the work performed appeared ancillary to the business, include *Bass v. Nat'l Super Mkts., Inc.,* 911 S.W.2d 617 (Mo.1995) (janitor was statutory employee of grocery store which had contracted with janitor's direct employer, a janitorial service); *McGrath v. VRA I Ltd. P'ship,* 244 S.W.3d 220 (Mo.App. E.D.2008) (maintenance worker employed by maintenance company to manage all apartments over a period of time was statutory employee of apartment owner). In contrast, cases not finding statutory employment for similar types of work focused on the sporadic nature of the employment. *E.g., Looper v. Carroll,* 202 S.W.3d 59 (Mo.App. W.D.2006) (drywall delivery man was not statutory employee of general contractor, who had hired subcontractor, who had hired delivery company because no evidence contractor would have had to hire permanent employees to fulfill delivery task) *and Nichols v. Overnight Express, Inc.,* 156 S.W.3d 406 (Mo.App. W.D. 2005) (employee of company who performed trailer repairs for a trucking company was not statutory employee: though work was essential to trucking company's business, it was not routine or frequent).

therefore Richter's voluntary dismissal of his FELA count was effective without a court order. The trial court correctly concluded that it had no authority to reinstate Richter's claim.

Richter was the statutory employee of Union Pacific because his work was pursuant to contract, he was injured on the premises of Union Pacific, and the work he performed was in Union Pacific's usual course of business. Therefore, Richter's exclusive remedy was workers' compensation, and the trial court properly dismissed his common law negligence claim for lack of subject matter jurisdiction.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.