In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

BRENDA LINKOUS, ) ED109136
 )
 Appellant, ) Appeal from the Circuit Court
 ) of St. Louis County
v. ) 19SL-CC01124
 )
KIRKWOOD SCHOOL DISTRICT, ) Honorable John N. Borbonus
 )
 Respondent. ) Filed: June 8, 2021

 Brenda Linkous (Linkous) appeals from the trial court’s grant of summary judgment in

favor of Kirkwood School District (KSD) on her claim for negligence. We affirm.

 BACKGROUND

 On March 2, 2015, Linkous was injured while exiting her car on KSD’s parking lot. She

subsequently filed a petition in the St. Louis County Circuit Court alleging KSD negligently

maintained its premises and caused her injuries. KSD filed a motion for summary judgment

arguing Linkous was a statutory employee pursuant to Section 287.040 RSMo., 1 and that she

knew of the dangerous condition on KSD’s premises before she was injured. Linkous timely

responded. The Rule 74.04(c) 2 summary judgment record adduced the following facts.

1
 All statutory references are to RSMo (2016), unless otherwise indicated.
2
 All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.
 The Individuals with Disabilities Education Act (IDEA), provides federal financial

assistance to state and local education agencies to ensure students with disabilities receive a free

appropriate public education in the least restrictive environment. 20 U.S.C. §§ 1400-1485. The

policy goals of IDEA are codified in the Missouri State Plan (State Plan), 5 C.S.R. § 20-300.110,

which requires all students with disabilities receive a free education in the same setting as their

non-disabled peers to the maximum extent possible. See Sections 162.670, 162.680. Therefore,

each Missouri school district must provide “special educational services” for students with

disabilities, unless the district is part of a special school district, then it is solely the special

school district’s responsibility to provide special educational services to students with

disabilities. See Sections 162.700.4, 162.890. KSD is one of 22 component school districts

within the Special School District of St. Louis County (SSD). Therefore, KSD students with

disabilities must receive special educational services from SSD.

 IDEA requires KSD to enter into an agreement with SSD to develop and implement

Individualized Education Plans (IEPs) so that students with disabilities are provided a free

appropriate public education. See 34 C.F.R. § 300.154(a). This agreement is reflected in SSD’s

General Assurance Statement (Statement), which provides that KSD must work with SSD to

accomplish various educational and administrative activities including the identification and

evaluation of students with disabilities who may need special education services. The Statement

specifically requires a Joint Review Committee to determine each student’s eligibility for special

education services, and then provide an IEP which sets forth the special education services that

student will receive. 34 C.F.R. § 300.324. Moreover, this agreement was memorialized in a

2006 contract between KSD and SSD with which both parties complied, although it was not fully

 2
executed. This contract renewed annually and stated that SSD shall provide special education

services and the personnel to perform those services. 3

 Linkous began working for SSD as a sign language interpreter in 2011. She was assigned

to a deaf student at KSD during the 2013-14 and 2014-15 school years. She was required to

interpret and facilitate all communication between the deaf student and the rest of the school,

including teaching staff and other students. During this time, Linkous was contracted with SSD,

paid by SSD, wore an SSD badge, and reported directly to SSD. Her supervisor was an SSD

Area Coordinator, and SSD arranged for her to have a parking space on the Kirkwood High

School parking lot.

 On March 2, 2015, Linkous left early for work due to icy road conditions. Upon entering

the Kirkwood High School parking lot, she observed students holding on to their cars while

walking to the school building. She parked in her assigned parking spot, and upon exiting her

vehicle, her feet went out from under her and she fell to the ground, seriously injuring her left

hand. Some passing students helped her into the school where she filed an injury report with

SSD. Linkous subsequently sought worker’s compensation benefits, which SSD paid.

 On March 14, 2019, Linkous filed her petition against KSD alleging that KSD created a

dangerous condition by allowing black ice and other slippery conditions to remain on the parking

lot of Kirkwood High School on the morning she was injured. She claimed KSD failed to cover

3
 The contract provided in relevant part:
 SSD shall provide special education programs and services to residents and voluntary transfer []
 students, if applicable, of [KSD] who are identified as disabled. SSD shall provide teachers,
 therapists, teacher aides, coordinators and other personnel required to fulfill this responsibility. The
 SSD staff assigned to [KSD] schools shall remain the responsibility of SSD. While the SSD staff
 is supervised by and answerable to the Superintendent of SSD and other supervisory personnel of
 SSD, [KSD] principals are encouraged to provide feedback concerning said staff to SSD and said
 staff is required to abide by all rules and regulations of [KSD].

 3
the parking lot with sufficient salt or otherwise remove the dangerous condition, thereby making

it not reasonably safe for use by her and others similarly situated.

 On April 17, 2020, KSD filed a motion for summary judgment arguing Linkous was its

statutory employee, which the trial court granted.

 This appeal follows.

 STANDARD OF REVIEW

 Appellate courts review trial court decisions to grant summary judgment de novo.

Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011). Summary judgment is

proper if the movant establishes there is no genuine issue as to the material facts and the movant

is entitled to judgment as a matter of law. Id. Facts contained in affidavits or otherwise attached

in support of the movant’s motion are accepted as true unless contradicted by the nonmoving

party’s response to the summary judgment motion. Id. Specifically, the nonmovant must

support its denials with specific references to discovery or affidavits demonstrating a genuine

factual issue for trial. Rule 74.04(c)(2), (c)(4). The record is reviewed in the light most

favorable to the party against whom summary judgment was entered, and that party is entitled to

the benefit of all reasonable inferences from the record. Green v. Fotoohighiam, 606 S.W.3d

113, 116 (Mo. banc 2020) (quoting Goerlitz, 333 S.W.3d at 453).

 DISCUSSION

 Linkous asserts seven points on appeal. In Points I through V, Linkous argues the trial

court erred in granting summary judgment because KSD was not her statutory employer in that:

(I) KSD was preempted from providing special educational services, so it could not have

“commissioned” such services from her; (II) KSD failed to prove the existence of a valid

contract between KSD and SSD; (III) KSD was preempted from providing special educational

 4
services, so the provision of those services was not in its usual course of business; (IV) KSD

failed to provide evidence that it ever hired any sign language interpreters for its students; and

(V) the specialized work provided by Linkous is excluded from statutory employer analysis. We

find the statutory employment issue is dispositive; therefore, we do not reach Points VI and VII. 4

 The party asserting the existence of statutory employment bears the burden of proving

that the injured person was a statutory employee. McCracken v. Wal-Mart Stores East, LP, 298

S.W.3d 473, 480 (Mo. banc 2009). KSD asserted Linkous was its statutory employee in its

motion for summary judgment and bore the burden of proving each element of its statutory

employer status. Section 287.040.1 defines a statutory employer as:

 Any person who has work done under contract on or about his premises which is
 an operation of the usual business which he there carries on shall be deemed an
 employer and shall be liable under this chapter to such contractor, his
 subcontractors, and their employees, when injured or killed on or about the
 premises of the employer while doing work which is in the usual course of his
 business.

 Thus, the elements to establish statutory employment are: (1) the work is performed

pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory

employer; and (3) the work is in the usual course of the alleged statutory employer’s business.

McCracken, 298 S.W.3d at 480 (citing Bass v. Nat’l Super Mkts, Inc., 911 S.W.2d 617, 619 (Mo.

banc 1995)). Linkous challenges the first and third elements.

 Point I

 In Point I, Linkous argues KSD could not “commission” her work because Missouri law

preempts KSD from providing special educational services. She asserts a novel argument which

4
 Point VI asserts the trial court erred in granting KSD’s motion for summary judgment because a material fact
remained in dispute whether KSD should have foreseen that Linkous would be unable to appreciate the dangerous
condition and protect herself from it. Point VII argues the trial court erred in granting KSD’s motion for summary
judgment because the uncontroverted facts established Linkous fell on black ice, and whether black ice is an open
and obvious condition is a fact issue for the jury.

 5
would require an additional element that, in order to be deemed a statutory employer pursuant to

Section 287.040.1, “any person who has work done” must be able to actually “commission” the

work from the injured person or their employer. However, this argument fails to recognize the

unique relationship created by state statute between KSD and SSD to accomplish the federal

mandate to ensure students with disabilities receive a free appropriate public education in the

least restrictive setting. Therefore, KSD is not required to “commission” such services because

SSD, by its very creation, is required to provide them.

 Moreover, under Section 287.800, courts must strictly construe the provisions of the

Workers’ Compensation laws, such as Section 287.040.1.

 Strict construction means that a statute can be given no broader application than is
 warranted by its plain and unambiguous terms. The operation of the statute must
 be confined to matters affirmatively pointed out by its terms, and to cases which
 fall fairly within its letter. A strict construction of a statute presumes nothing that
 is not expressed.

State ex rel. KCP & L Greater Missouri Operations Co. v. Cook, 353 S.W.3d 14, 20 (Mo. App.

W.D. 2011). The plain language of Section 287.040.1 does not include the word “commission”

in setting forth the requirements for establishing statutory employment. Numerous cases

exhaustively discuss the requirements of Section 287.040.1, but the parties do not cite, nor have

we found, a single one discussing the term “commission.” 5 Indeed, in Bass our Supreme Court

stated Section 287.040.1 contains only three elements: (1) the work is performed pursuant to a

contract; (2) the injury occurs on the statutory employer’s premises; and (3) the work is in the

5
 Linkous relies solely on T.F., et al. v. Special School District of St. Louis County, 4:04-CV-00276 (E.D. Mo 2004),
arguing that SSD agrees with her proposition that SSD is the only one who can provide students with special
educational services. That case is unpersuasive because T.F. was an action seeking tuition reimbursement pursuant
to 20 U.S.C. § 1412(a)(10)(C) for a student who enrolled in a private school and makes no reference to statutory
employment, nor does it discuss the requirements of Section 287.040.

 6
statutory employer’s usual business. See Bass, 911 S.W.2d at 619-20. Accordingly, we decline

to recognize an additional element to establish statutory employment. Point I is denied.

 Point II

 In Point II, Linkous asserts KSD’s motion for summary judgment failed to establish her

work was performed pursuant to a contract because KSD did not prove the existence of a valid

contract between KSD and SSD. Specifically, she argues the contract element was not met

because the 2006 contract offered by KSD violated the statute of frauds as it was not signed by

SSD. KSD responds that either a valid written contract existed between KSD and SSD or a

contract can be implied by the conduct of the parties pursuant to the statutory mandates, the State

Plan, and the Statement.

 The word “contract” in the context of Section 287.040.1 includes agreements which are

written, oral, express or implied. McGuire v. Tenneco Inc., 756 S.W.2d 532, 535 (Mo. banc

1988); State ex rel. J.E. Jones Const. Co. v. Sanders, 875 S.W.2d 154, 157 (Mo. App. E.D.

1994). The work in question does not need to be specifically described in the contract to support

a finding of statutory employment. Olendorff v. St. Luke’s Episcopal-Presbyterian Hosps., 293

S.W.3d 47, 50-51 (Mo. App. E.D. 2009).

 Here, Linkous was undisputedly employed as a sign language interpreter each day on

KSD’s premises. Her work as a sign language interpreter was pursuant to the agreement

between KSD and SSD, which is described in part by the 2006 contract, but is also mandated by

the state and federal law, as well as the Statement. While she was paid by SSD, the money came

from the agreement between KSD and SSD regarding their joint responsibilities for educating

students with special needs. Accordingly, the trial court did not err in finding a contract for the

purpose of Section 287.040.1. Point II is denied.

 7
 Point III

 In Point III, Linkous argues KSD’s usual business does not include providing sign

language interpreters for students because Missouri statute prohibits KSD from doing so.

Specifically, Section 162.700.4 requires that where special school districts (such as SSD) have

been formed to serve children with severe disabilities (such as the deaf student here), such

children shall be educated in programs of the special district. KSD responds that Linkous’ view

of its usual business is too narrow. KSD asserts its usual business includes integrating students

with disabilities into a general education setting along with their non-disabled peers pursuant to

Section 162.680.2.

 In Bass, the Missouri Supreme Court distilled decades of caselaw that struggled to

articulate a test to determine the contours of an employer’s “usual business.” See Bass, 911

S.W.2d at 620. The Court noted that the legislature’s intent in adopting Section 287.040.1 was

to prevent employers from avoiding their duties under the Workers’ Compensation laws by

contracting out work that their employees would usually do. Id. at 621. Accordingly, the Court

announced that “usual business” as used in Section 287.040 means “those activities (1) that are

routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between

the independent contractor and statutory employer to be repeated over a relatively short span of

time (4) the performance of which would require the statutory employer to hire permanent

employees absent the agreement.” Bass, 911 S.W.2d at 621. The Court excluded from this

definition “specialized or episodic work that is essential to the employer but not within the

employer’s usual business as performed by its employees.” Id.

 To determine whether Linkous was engaged in KSD’s usual business, we consider the

“real roles and relationships” of the parties. McCracken, 298 S.W.3d at 481. In McCracken, the

 8
plaintiff (McCracken) was employed by IBC – a company that produced and delivered bread

products. Id. at 475. McCracken’s duties were to deliver bread to Wal-Mart, place the bread on

the Wal-Mart shelves, and then leave to make the next delivery. Id. at 481. Wal-Mart did not

demonstrate that its employees had ever delivered and shelved the bread that IBC provided, or

that IBC would even permit Wal-Mart employees to do so. Id. The Court considered a number

of factually similar cases and recognized a distinction between plaintiffs who merely equipped

the statutory employer for business, and plaintiffs who actually engaged in that business

themselves. Id. at 481. The Court held that McCracken’s role in delivering bread was merely to

equip Wal-Mart for business, not to engage in Wal-Mart’s business of selling that bread, himself.

Id. Delivering bread was part of the regular work of IBC, not Wal-Mart. Id. To Wal-Mart,

bread delivery was in the nature of “specialized . . . work that is essential to” Wal-Mart’s sale of

that product, but not within Wal-Mart’s “usual business as performed by its employees.” Id.

(quoting Bass, 911 S.W.2d at 621). Thus, Wal-Mart was not McCracken’s statutory employer.

Id.

 In Richter v. Union Pacific Railroad Co., Union Pacific Railroad used a staffing company

to provide personnel to staff its communications center. 265 S.W.3d 294, 296 (Mo. App. E.D.

2008). The two-year agreement required the staffing company to supervise and train its

employees, and that the staffing company would be responsible for hiring and firing decisions

concerning those employees, and further that the staffing company had to maintain worker’s

compensation and liability insurance. Id. The plaintiff was a communications specialist working

for the staffing company who was injured when his chair unexpectedly collapsed, injuring his

neck and back. Id. This Court determined the plaintiff was a statutory employee of Union

Pacific because he was a term employee and performed tasks on a daily basis for Union Pacific.

 9
Id. at 302. We rejected the plaintiff’s argument that his work as a communications specialist was

merely ancillary to Union Pacific’s business because since Bass, courts have placed more

emphasis on the nature of the agreement and the time frame under which it was performed than

on the nature of the work. Id.

 Here, Linkous was a sign language interpreter employed by SSD who was stationed at

Kirkwood High School to facilitate communication between a deaf student and his teachers and

peers. Like the plaintiff in Richter, Linkous worked every day on KSD’s premises at Kirkwood

High School. However, McCracken’s role of delivering bread to Wal-Mart then leaving once his

task was complete is different from Linkous’ role of acting as an intermediary between the deaf

student and his school environment for the entire school day. Whereas McCracken’s task was to

deliver a product to Wal-Mart and Wal-Mart’s business included selling that product to

customers, Linkous’ task was to continually enable the education of a deaf student alongside his

non-disabled peers at Kirkwood High School. It was ultimately KSD’s business to create an

integrated general education setting. As compared to McCracken, Linkous’ role was much more

closely aligned with the usual business of KSD. As compared to Richter, Linkous worked just as

frequently on KSD’s premises. Point III is denied.

 Point IV

 In Point IV, Linkous argues KSD failed to establish sign language interpretation services

were part of KSD’s usual business because KSD did not present evidence that it ever hired sign

language interpreters for its students. There is a subtle difference between this point and Point

III, in that this point focuses on the type of evidence required to establish a statutory employer’s

usual business.

 10
 Linkous relies on McCracken and its discussion of Parker v. National Super Markets,

Inc., 914 S.W.2d 30, 31-32 (Mo. App. E.D. 1995). In Parker, the plaintiff worked for Pepsi

delivering its products to grocery stores such as the defendant’s. Id. at 31. The agreement

between Pepsi and the defendant specified that Pepsi employees like the plaintiff would deliver

Pepsi products to the defendant’s store, and Pepsi employees would unload and shelve the

products themselves. Id. at 31-32. There was no evidence that the defendant’s employees ever

delivered Pepsi products. Id. The court held the plaintiff’s delivery of Pepsi products to the

defendant’s stores was not in the defendant’s usual course of business. Id.

 Here, KSD did introduce uncontroverted evidence that it hired sign language interpreters

on various occasions when interacting with the parents of students. This evidence distinguishes

the case at hand from McCracken and Parker. Therefore, it was sufficient that KSD introduced

evidence it hired sign language interpreters in the past to show that employing sign language

interpreters was not unusual for its business. Point IV is denied.

 Point V

 In Point V, Linkous argues her work as a sign language interpreter is specialized and

therefore excluded from KSD’s usual business. KSD responds that sign language interpretation

is not so specialized that it falls outside KSD’s usual business. The issue is whether sign

language interpretation is “specialized . . . work that is essential to [KSD] but not within [KSD’s]

usual business as performed by its employees.” Bass, 911 S.W.2d at 621. The statutory

employment cases addressing the specialization issue seem to weigh how specialized the work is

against the other factors in Bass’s definition of “usual business.”

 In Sebacher, Midland Paper Co. was a distributor of paper and packaging supplies who

typically delivered its own products. Sebacher v. Midland Paper Co., 610 S.W.3d 402, 403 (Mo.

 11
App. E.D. 2020). However, at one of Midland’s 18 warehouse distribution centers, it regularly

contracted CRH Transportation to deliver its products. Id. The plaintiff worked as a full-time

employee of CRH delivering Midland’s products. Id. at 403-04. The contract between Midland

and CRH stated CRH’s drivers were solely the employees of CRH, and required that CRH

maintain worker’s compensation insurance. Id. The plaintiff was allegedly assaulted while

picking up products from Midland and brought an action against Midland for failing to supervise

the employee that injured him. Id. The trial court granted Midland’s motion for summary

judgment on its affirmative defense of statutory employment, and the plaintiff appealed, arguing

his work was not in Midland’s usual business because it was specialized. Id. at 406. The

plaintiff asserted his work delivering Midland’s products was specialized because the contract

between Midland and CRH required CRH to provide “Department of Transportation certified

drivers” who had valid commercial driver’s licenses and were regularly drug screened. Id. at

406. This Court stated that the performance of routine, frequent, and regular contractual duties is

within the usual business of the employer. Id. at 407 (citing Bass, 911 S.W.2d at 618). We held

that the contractual requirements regarding CRH’s drivers did not make the plaintiff’s work

delivering Midland’s products so specialized that it fell outside the usual business of a

distributor. Id. at 407. Thus, Midland was the plaintiff’s statutory employer. Id.

 In contrast, in Miller v. American Royal Ass’n, a plaintiff was injured while preparing

livestock for a rodeo event put on once a year by American Royal as part of a large show

consisting of a variety of other events such as parades, concerts, barbeques, and livestock shows.

140 S.W.3d 74, 78 (Mo. App. W.D. 2004). The plaintiff worked for Harry Vold Rodeo – a

rodeo contractor approved by the Professional Rodeo Cowboys Association (PRCA). Id. The

PRCA was established to sanction rodeos in the United States because of the specialized nature

 12
of setting up and operating rodeos. Id. American Royal was not a PRCA-approved contractor,

so even if it could hire its own permanent employees with the specialized knowledge required to

operate a rodeo, it could not actually conduct a rodeo without violating the PRCA sanctioning

rules. Id. at 78-79. Therefore, American Royal contracted with Harry Vold Rodeo to conduct

the rodeo. Id. at 79. The Western District held the work being performed by the plaintiff when

he was injured was the type of specialized work excluded from Bass’s definition of “usual

business” because without Harry Vold Rodeo, or some other PRCA sanctioned contractor,

American Royal would not have held the rodeo event portion of its show. Id. Thus, American

Royal was not the plaintiff’s statutory employer. Id.

 Here, Linkous worked at Kirkwood High School every school day, which is more like the

regular deliveries by the truck driver in Sebacher than the annual rodeo preparation by the rodeo

worker in Miller. While it is true that sign language interpreters have specialized training and

certification, so too did the truck driver in Sebacher, whose work was found to be within the

usual business of the paper distribution company. The fact that Missouri statutes require KSD to

utilize SSD for “special education services” does not immediately exempt those services from

KSD’s usual business, which includes integrating all students into a general education

environment. Accordingly, Linkous’ work as a sign language interpreter was not so specialized

that it was not part of KSD’s usual business. Point V is denied.

 In denying Points I through V, we find the trial court did not err in granting KSD’s

motion for summary judgment because KSD established the elements of its affirmative defense

that Linkous was its statutory employee. Accordingly, the Workers’ Compensation laws were

Linkous’ exclusive remedy. See Section 287.120.2. Finding this issue dispositive, we need not

discuss the remaining points on appeal.

 13
 CONCLUSION

 The trial court’s judgment is affirmed.

 ____________________________________
 Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.

 14