

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **DONALD BROOKS,** | **WD85031** |
| Appellant, | **OPINION FILED:** |
| v. | **November 22, 2022** |
| **WILLIAM J. LAURIE AND CROWN CENTER FARMS, INC.,** | |
| Respondents. | |

**Appeal from the Circuit Court of Randolph County, Missouri
The Honorable Scott Alan Hayes, Judge**

**Before Division Two:
Lisa White Hardwick, P.J., Thomas N. Chapman and Janet Sutton, JJ.**

Plaintiff Donald Brooks ("Brooks") appeals a judgment of the Circuit Court of Randolph County, which granted a joint motion for summary judgment filed by Defendants Crown Center Farms, Inc. ("Crown Center Farms") and William Laurie ("Laurie"). The grant of summary judgment was based on the circuit court's determination that Crown Center Farms was Brooks's statutory employer under section 287.040[1] and that Laurie was an employee of Crown Center

---

[1] With regard to the Workers' Compensation Law, "the statute in effect at the time of injury is generally the applicable version." *Kayden v. Ford Motor Co.*, 532 S.W.3d 227, 229 n.1 (Mo. App. W.D. 2017) (citing *Anderson v. Veracity Research Co.*, 299 S.W.3d 720, 725 (Mo. App. W.D. 2009)). Accordingly, statutory citations are to RSMo 2000, as supplemented through August 31, 2015, which is the date of injury in this case.

Farms, such that the Workers' Compensation Law[2] provided Brooks's exclusive remedy against Crown Center Farms or Laurie pursuant to section 287.120.

In his first two points, Brooks contends that the circuit court erred in granting summary judgment to Crown Center Farms on the basis of Crown Center Farms being Brooks's statutory employer because there were genuine issues of material fact regarding (1) whether Brooks was injured on or about the premises of Crown Center Farms, and (2) whether the injury occurred during the performance of work that was within Crown Center Farms' usual course of business. In his third point, Brooks argues that the circuit court erred in granting summary judgment to Laurie on the basis of Laurie being an employee of Brooks's statutory employer, Crown Center Farms. In his fourth point, Brooks argues that the circuit court erred in granting summary judgment to Laurie on the basis of the corporate existence of Crown Center Farms. The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

## Background[3]

On August 31, 2015, Brooks suffered an injury while he was employed as a superintendent for Little Dixie Construction Company ("Little Dixie Construction"), and while Brooks was performing work cutting down trees at Big Buck Resort, Inc. ("Big Buck"), a hunting resort located near Cairo, Missouri. Brooks alleges that he was injured when a tree that was cut by Defendant Laurie fell down on Brooks causing injuries to his head, neck, chest, arm, and ribs, including numerous fractures.

---

[2] Section 287.010 provides that Chapter 287 RSMo "shall be known as 'The Workers' Compensation Law'."

[3] The record is viewed in the light most favorable to Brooks – the non-movant in the summary judgment proceedings. *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020). In this matter, the background facts are taken primarily from what was uncontroverted in the parties' statements of fact.

At the time of the incident, Defendant Laurie was a shareholder/member of Big Buck.[4] Members of Big Buck were not assigned particular plots of land on Big Buck, but members could unofficially select a designated hunting area by telling other members that the selected area is where the member would hunt. Laurie had authority to cut trees on the portion of Big Buck that was his designated hunting area.

Laurie co-owns Crown Center Farms with his wife. Crown Center Farms is located in Columbia, Missouri. Crown Center Farms was created as a horse breeding operation and to care for and maintain the various property interests of the Lauries. Crown Center Farms employs one full-time ranch hand, Tim Cullen ("Cullen"). Cullen assists with maintaining and caring for Crown Center Farms and various properties owned by the Lauries, including to help manage Laurie's hunting area at Big Buck.

Plaintiff Brooks was a superintendent for Little Dixie Construction and was a salaried employee. On the date of Brooks's injury, Brooks was working as an employee of Little Dixie Construction, which was primarily a commercial construction company. Little Dixie Construction regularly performed services for Crown Center Farms and Laurie.

As an employee of Little Dixie Construction, Brooks performed an assortment of general maintenance and construction services for Crown Center Farms over a period of ten years. These tasks varied and included plumbing, electrical, painting, and tile work, brush-hogging Laurie's pastures, working on Laurie's pool, assisting with Laurie's daughter's wedding, and once burying Laurie's dog. Brooks regularly went to Crown Center Farms, Big Buck, and the Lauries' other properties to perform work for Crown Center Farms and Laurie. When

---

[4] The summary judgment record is not altogether clear as to what is meant by the fact that Laurie is a "member" of Big Buck; however, that fact is uncontested.

performing tasks for Crown Center Farms through his employment with Little Dixie Construction, Brooks would report his time to Little Dixie Construction. Little Dixie Construction would then bill Crown Center Farms. Brooks's payment for these tasks came through his salary from Little Dixie Construction. Brooks had been to Big Buck approximately ten times prior to the day of the incident.

On the day of the incident, Laurie contacted Brooks and requested his assistance at Big Buck. On that day, the people working at Big Buck included Plaintiff Brooks, Laurie, Cullen, two additional laborers not identified by name in the record, and Eddie Brooks ("Eddie"),[5] who was the brother of Plaintiff Brooks and also an employee of Little Dixie Construction. On the date of the incident, Brooks and Laurie were cutting down trees with chainsaws, while Eddie was running a "bobcat." Cullen and the two unidentified laborers were cleaning up and clearing brush as the trees came down. Laurie instructed which trees were to be cut up into firewood and which trees were to be disposed of in a ditch by placing dots on the trees. Brooks and Laurie were the only two persons who were cutting down trees on the day of the incident.

Following the incident, Crown Center Farms continues to utilize a Little Dixie Construction employee named Billy to perform an assortment of property maintenance tasks that had previously been performed by Brooks, but these tasks do not extend to the cutting down and clearing of trees on the Big Buck property. Big Buck now contracts with a professional logger to clear the Big Buck property.

Following the incident, Brooks filed a workers' compensation claim against Little Dixie Construction for the injuries sustained while working at Big Buck. Brooks had received a partial

---

[5] To avoid potential confusion due to the shared last name of Plaintiff Donald Brooks and his brother Eddie Brooks, we refer to Eddie Brooks as "Eddie." No disrespect is intended.

disability award under Little Dixie Construction's workers' compensation policy, but his workers' compensation claim had not been fully resolved by the time the summary judgment motion was filed.

On October 9, 2018, Brooks filed a three-count Petition for Damages, which named Laurie, Crown Center Farms, and Big Buck as defendants. The Petition alleged that, on August 31, 2015, Brooks was injured while working at Big Buck for his employer, Little Dixie Construction Company. Brooks alleged that, through no fault of his own, a tree cut by Defendant Laurie fell on Brooks and caused Brooks injury. Defendants Laurie and Crown Center Farms filed answers to the petition and asserted as an affirmative defense that Brooks may be deemed a statutory employee of Crown Center Farms, Laurie, or Big Buck so as to be barred from recovery against these defendants.

On May 20, 2020, Laurie and Crown Center Farms filed a Joint Motion for Summary Judgment along with a statement of uncontroverted facts and a memorandum in support. The motion asserted that Crown Center Farms was Brooks's statutory employer pursuant to section 287.040.1 such that Brooks's exclusive remedy was provided under The Workers' Compensation Law. Further, the motion argued that Laurie was an employee of Crown Center Farms so as to be shielded from liability under The Workers' Compensation Law.

Brooks filed a response to the motion and the statement of uncontroverted facts along with a separate statement of uncontroverted facts and a memorandum in opposition to the motion. The Defendants thereafter filed a reply along with a response to Brooks's separate statement of uncontroverted facts.

The circuit court held a hearing on the motion on July 27, 2020. On November 13, 2020, the trial court entered an order[6] which granted summary judgment to Defendants Crown Center Farms and Laurie. The trial court's grant of summary judgment in favor of Crown Center Farms was based on the trial court's determination that Crown Center Farms was a statutory employer of Brooks so as to trigger the exclusive remedy provisions of The Workers' Compensation Law. The trial court's grant of summary judgment in favor of Laurie was based on the trial court's determination that Laurie was an employee of Crown Center Farms so as to shield Laurie from liability under The Workers' Compensation Law.

Brooks now appeals to this court.

## Standard of Review

The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

---

[6] The November 13, 2020 order was denominated a "Judgment." However, the order did not dispose of all claims between all parties, as the order did not dispose of Brooks's claims against Big Buck Resort. Rule 74.01(b) provides: "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. . . ." In this matter, no such express determination was included in the order, such that the order, although denominated a judgment, was not at that time (and in that form) a judgment. The order, therefore, did not "terminate the action as to any of the claims or parties . . . ." Rule 74.01(b). On November 3, 2021, Brooks dismissed his claims against Big Buck Resort, which left nothing for future determination in the case. As the thirty-day window under Rule 81.05(a)(1) governing when a judgment becomes final did not begin to run until the claims against Big Buck Resort were dismissed, Brooks's notice of appeal filed on December 6, 2021 was filed timely. *See BV Capital, LLC v. Larry Hughes*, 437 S.W.3d 391, 392 (Mo. App. E.D. 2014) (citing *Bailey v. Innovative Mgmt. & Inv., Inc.*, 890 S.W.2d 648, 649-50 (Mo. banc 1994)).

....

The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion.

*Green v. Fotoohighiam*, 606 S.W.3d 113, 115-116 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)).

**Analysis**

"Under Missouri's workers' compensation laws, in exchange for providing mandatory workers' compensation coverage – without regard to fault – employers and their employees are granted immunity from civil lawsuits arising out of workplace injuries." *State ex rel. Beutler, Inc. v. Midkiff*, 621 S.W.3d 491, 493 (Mo. banc 2021) (citing § 287.120). One method of establishing that a person or entity is an "employer" under The Workers' Compensation Law is by establishing that the person or entity is a "statutory employer" pursuant to section 287.040. [7] "Section 287.040 extends the workers' compensation obligations (and civil immunity protections) to 'statutory employers.'" *Id.* (citing § 287.040). "If an injured employee qualifies as a 'statutory employee' of the 'statutory employer,' their right to recover under workers' compensation laws excludes all other rights and remedies the employee might have." *Id.*

---

[7] On appeal, the Defendants contend that there are additional bases that would establish that Crown Center Farms was Brooks's employer so as to entitle the Defendant's to summary judgment under the exclusivity provisions of The Workers' Compensation Law. However, appellate review of a decision to grant summary judgment is limited to the issues put before the trial court." *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. E.D. 2014) (quoting *Sheedy v. Mo. Highways and Transp. Comm'n*, 180 S.W.3d 66, 70 (Mo. App. S.D. 2005)). Accordingly, in this appeal we address "only those issues properly raised in the [Defendants'] motion for summary judgment and the responses thereto." *Id.* (quoting *Heffernan v. Reinhold*, 73 S.W.3d 659, 663 (Mo. App. E.D. 2002)). In this matter, the summary judgment motion contended that Brooks's claims were barred because Crown Center Farms was Brooks's statutory employer and that Laurie was an employee of Brooks's statutory employer (Crown Center Farms). Accordingly, we address only these grounds which were raised in the summary judgment motion.

Section 287.040 "is designed to prevent employers from evading [The Workers' Compensation Law's] requirements by hiring independent contractors to perform work the employer otherwise would hire ordinary employees to perform." *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 480 (Mo. banc 2009).

> Section 287.040.1 provides a definition for "statutory employer":
>
> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

Accordingly, a person or entity is a statutory employer of the statutory employee if: (1) the work is performed under a contract; (2) the injury occurs on or about the premises of the purported statutory employer; and (3) the work is an operation of the usual business of the statutory employer. "The party asserting the existence of statutory employee status bears the burden of proving that the injured person was a statutory employee of the purported statutory employer." *McCracken*, 298 S.W.3d at 480.

In this matter, the Defendants raised the affirmative defense that Crown Center Farms was Brooks's statutory employer such that The Workers' Compensation Law provided Brooks's exclusive remedy. As the movants for summary judgment on this issue, the Defendants had the burden of establishing "that there [was] no genuine issue as to the material facts and that [they were] entitled to judgment as a matter of law." *Green*, 606 S.W.3d at 115. "In the workers' compensation context, where 'the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for

8

the courts to decide.'" *McCracken*, 298 S.W.3d at 476 (quoting *Bass v. Nat'l Super Mkts.*, 911 S.W.2d 617, 621 (Mo. banc 1995)).

In Brooks's first two points on appeal, he challenges the grant of summary judgment in favor of Crown Center Farms, arguing that Crown Center Farms failed to establish as a matter of law that it was Brooks's statutory employer. He contends that there were genuine issues of material fact regarding (1) whether the injury occurred on or about Crown Center Farms' premises, and (2) whether Brooks was injured while performing work in the usual business of Crown Center Farms. In his third point, Brooks contends that if Crown Center Farms was not Brooks's statutory employer under section 287.040.1, then Laurie would not be protected by immunity as the employee of Brooks's statutory employer. In his fourth point, Brooks argues that the trial court erred in determining that the corporate status of Crown Center Farms protected Laurie from being personally liable for his own conduct.[8]

We begin by analyzing Brooks's second point, as it is dispositive of whether the grant of summary judgment was appropriate with respect to Crown Center Farms. We then proceed in addressing Brooks's third and fourth points.

**Point Two**

In his second point on appeal, Brooks argues that the trial court erred in granting summary judgment in favor of Crown Center Farms because there were genuine issues of material fact regarding whether Brooks was injured while doing work in the usual course of Crown Center Farms' business, as required for Crown Center Farms to qualify as a statutory

---

[8] There is some confusion on appeal between the parties regarding the contours of the trial court's determination regarding the protections conveyed by the corporate status of Crown Center Farms. We address this confusion and the scope of the trial court's determination in our analysis of Brooks's fourth point on appeal.

employer of Brooks. More specifically, Brooks contends that he worked at the Big Buck property annually at most, that the cutting of trees at Big Buck was not performed annually, and that Big Buck now employs a professional logger to clear the entire property.

For a person to be a statutory employer, the work done under the contract on his premises must be "an operation of the usual business which he there carries on . . . ." § 287.040.1. In *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617 (Mo. banc 1995), the Missouri Supreme Court defined the phrase "usual business" as used in section 287.040. *Id.* at 621. The *Bass* Court found it necessary to do so because Missouri courts had struggled with the concept of what constitutes the "usual business" of a purported statutory employer. *Id.* at 620-21. The *Bass* Court identified two lines of cases that had analyzed the term "usual business." *Id.* at 620. Under the first line of cases, a company's "usual business" entailed all of the activities that were "essential and integral to the statutory employer's business." *Id.* (collecting cases where courts had taken this analytical approach). Under the second line of cases, Missouri courts had taken the approach of placing a greater focus on the routine and frequent nature of the independent contractor's work to determine whether such work fell within the usual business of the putative statutory employer. *Id.* at 620-21 (collecting cases where courts had taken this analytical approach). The *Bass* Court noted that the holdings relying on the essential/integral test (the first line of cases referenced) had produced uneven results because "any activity undertaken or service contracted for is arguably essential and integral to the usual business of the putative employer no matter how removed from the work its employees regularly perform [in] its day-to-day operation." *Id.* at 621. The *Bass* Court concluded that the essential/integral test swept too broadly, likely a result of courts liberally extending the coverage of The Workers' Compensation

10

Law so as to permit compensation where it would not otherwise have existed.[9] *Id.* The *Bass*

Court then noted that the routine/frequent test (the second line of cases) was narrower and

possessed the virtues of accommodating the purpose of section 287.040.1 while not operating so

broadly as to sweep within its reach work that was not within the employer's usual business as

performed by its employees. *Id.*

In light of the precedent analyzed in *Bass*, the *Bass* Court defined a putative employer's

"usual business" as used in section 287.040 as

> those activities (1) that are routinely done (2) on a regular and frequent schedule
> (3) contemplated in the agreement between the independent contractor and the
> statutory employer to be repeated over a relatively short span of time (4) the
> performance of which would require the statutory employer to hire permanent
> employees absent the agreement.

*Id.* In so defining "usual business," the *Bass* Court specifically sought to exclude from its

definition "specialized or episodic work that is essential to the employer but not within the

employer's usual business as performed by its employees." *Id.*[10] "Whether a particular sort of

work is within a party's usual course of business is a fact-driven inquiry; there is no 'litmus

paper' test." *McCracken*, 298 S.W.3d at 480 (citation and quotation marks omitted).

---

[9] Specifically, the *Bass* Court indicated that the cases utilizing the essential/integral test were likely written broadly so as to accommodate the common law contributory fault system. *See id.*

[10] *Bass* was decided at a time when The Workers' Compensation Law was construed liberally in favor of workers' compensation coverage. *See Bass*, 911 S.W.2d at 621. In 2005, the General Assembly amended section 287.800 so that now "any reviewing courts shall construe the provisions of [The Workers' Compensation Law] strictly." § 287.800. Thus, following the effective date of the amendment, prior cases applying The Workers' Compensation Law liberally may be limited somewhat in their precedential value. However, in defining the phrase "usual business" as used in section 287.040.1, the *Bass* Court was construing the statutory language in a manner that sought to narrow coverage under The Workers' Compensation Law. *See Bass*, 911 S.W.2d at 621. Because the test delineated in *Bass* was written to restrict rather than extend coverage under The Workers' Compensation Law, and because the goal of the test was to accurately define "usual business" as used in section 287.040.1, the test delineated in *Bass* was not altered by the 2005 amendment.

As an initial matter, we must properly frame what activity or activities must fall within Crown Center Farms' "usual business." Brooks contends that section 287.040 makes clear that it is the work being done at the time and location of the injury that must be within the usual business of the purported statutory employer. We agree. Section 287.040.1 provides that the work done under the contract on the purported statutory employer's premises must be "an operation of the usual business which he there carries on . . . ." § 287.040.1. Further, section 287.040.1 applies only when the statutory employee is "injured or killed on or about the premises of the employer while doing work which is in the usual course of his business." § 287.040.1. *See also Hayes v. Ginger C, LLC*, 582 S.W.3d 140, 152 (Mo. App. W.D. 2019) ("By its plain terms, the inquiry required to determine statutory employment status is tied to the activity that resulted in injury.").

The Defendants contend that Crown Center Farms was created to maintain the Lauries' various property interests, thus the scope of Crown Center Farms' "usual business" extended to "whatever Mr. Laurie needed to have done to his properties." However, that conception is at odds with the plain language of the statute. Moreover, such a conception would sweep within the usual business of a putative statutory employer "any activity undertaken or service contracted for [that] is arguably essential and integral to the usual business of the putative employer no matter how removed from the work its employees regularly perform [in] its day-to-day operation." *See Bass*, 911 S.W.2d at 621. This conception of "usual business" was specifically rejected by the *Bass* Court as having produced uneven results, leading to the adoption of the four-prong test set forth in *Bass*. *Id.*

In this matter, the work being performed at Big Buck that resulted in Brooks's injury was the cutting down and clearing of trees. However, none of the facts stated in the Defendants'

12

statement of uncontroverted facts was directed at the frequency that Crown Center Farms cleared trees. Yet, some of the citations to deposition materials provided in support of the stated facts provide some indication of when Crown Center Farms engaged in the activity of clearing trees. Defendants cited to the deposition of Crown Center Farms employee Cullen in which Cullen stated that he was employed by Crown Center Farms for four or five years with the official title of "laborer." Cullen's biggest responsibility as an employee of Crown Center Farms was "running the greenhouse." Laurie testified in his deposition that Cullen helps Laurie with work at Laurie's house, at the Columbia Performing Arts Center, and that Cullen "occasionally" helps Laurie at Big Buck. With respect to Big Buck, Cullen indicated that he had been to Big Buck two or three times previously, and that his visits to Big Buck occurred approximately once per year to prep for deer season. Cullen indicated that sometimes the trips to Big Buck required him only to "weed eat" or "run the lodge." In Laurie's deposition, Laurie was asked whether clearing trees on his hunting area was an annual thing, to which Laurie responded: "We've done it several times over a certain amount of years." In Plaintiff Brooks's deposition, Brooks stated that, in past years, Brooks would go up with Laurie to prepare for deer camp, but this testimony did not reference the work that was done in preparing for deer camp. These cited portions of deposition testimony represent the extent of the evidence in the summary judgment record regarding the frequency that Crown Center Farms engaged in the work of clearing trees.

With respect to the first two elements of the *Bass* test (whether the activity was routinely done and whether the activity is done on a regular and frequent schedule), from the summary judgment record it remains disputed whether the cutting down and clearing of trees was an activity that was routinely done by Crown Center Farms on a regular and frequent schedule. None of the Defendants' facts in the statement of uncontroverted facts address the frequency

13

with which trees were cleared at Big Buck with any specificity. With respect to Crown Center Farms' performance of the cutting down and clearing of trees, the summary judgment record indicates that the clearing of trees at Big Buck occurred "several times over a certain amount of years." In the cited materials attached to the statement of facts, it appears that some sort of work on the Big Buck property occurred roughly once a year prior to deer hunting season, though the summary judgment record is rather generic as to the scope of what occurred. The summary judgment record fails to establish with any precision how frequently or regularly trees were cut down at Big Buck by Crown Center Farms' employees.

Moreover, and most significantly, based on the record before us, there is no indication from the summary judgment record that Crown Center Farms would have been required to hire permanent employees to cut down trees at Big Buck in the absence of an agreement between Crown Center Farms and Little Dixie Construction. From the record before us, there are no facts supporting a conclusion that the performance of a roughly annual task at an area within a recreational hunting area would require the hiring of permanent employees in the absence of the agreement between Crown Center Farms and Little Dixie Construction. Thus, under the *Bass* test, the summary judgment record fails to establish that the clearing of trees at Big Buck was within the usual business of Crown Center Farms.

The Defendants had the burden to establish as a matter of law that Crown Center Farms was Brooks's statutory employer. However, even accepting the Defendants' stated version of the facts and the citations in support as true, Defendants' motion failed to establish that Crown Center Farms was entitled to judgment as a matter of law on the basis that Crown Center Farms was Brooks's statutory employer. *See Green*, 606 S.W.3d at 115 ("Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts *and*

14

that the movant is entitled to judgment as a matter of law.") (emphasis added).[11]  Accordingly, the trial court erred in granting summary judgment to Crown Center Farms.

**Point Three**

In his third point, Brooks essentially contends that Laurie was entitled to the protections of The Workers' Compensation Law only if Crown Center Farms was Brooks's statutory employer so as to provide immunity to Laurie as an employee of Crown Center Farms. Conversely, if the trial court erred in determining that Crown Center Farms was Brooks's statutory employer, then Brooks asserts that the grant of summary judgment in favor of Laurie (as an employee of a statutory employer) was also erroneous.  We agree.

The summary judgment motion argued that Laurie was entitled to summary judgment as an employee of Brooks's statutory employer, Crown Center Farms.  If Crown Center Farms was Brooks's statutory employer, then Laurie, as Crown Center Farms' employee, would be entitled to be released from liability according to section 287.120.1.  However, the immunity asserted was contingent on Crown Center Farms being Brooks's statutory employer.  As we have determined that the grant of summary judgment to Crown Center Farms on the basis that Crown Center Farms was Brooks's statutory employer was in error, we likewise find the grant of summary judgment in favor of Laurie (which was contingent on the statutory employer status of Crown Center Farms) to be in error.

---

[11] This is not to say that the affirmative defense necessarily fails, as that question is not before this court.  Rather, based on the summary judgment record before us, the Defendants failed to establish that they were entitled to judgment as a matter of law.  The Defendants could conceivably put forth additional evidence in support of the defense.  However, irrespective of any factual disputes, if the moving party's own version of the facts fails to establish that the moving party is entitled to judgment as a matter of law, then summary judgment is inappropriate. *See Green*, 606 S.W.3d at 115.  In this matter, the Defendants' own version of the facts fails to establish that Crown Center Farms was Brooks's statutory employer as a matter of law.

15

**Point Four**

In his fourth point, Brooks asserts that the trial court erred in granting summary judgment to Laurie based solely on the corporate existence of Big Buck or Crown Center Farms. Brooks argues that such grounds were not raised in the summary judgment motion, and that, even if such grounds had been raised, Laurie could potentially still be liable for his own negligence.

This argument appears to arise in response to language in the trial court's judgment which addressed separately the liability of "Big Buck William Laurie," "Crown Center Farms William Laurie," and "William Laurie, the individual." At one point in the trial court's judgment, the trial court indicated that "William Laurie, as principal of Crown Center Farms, has every bit of protection . . . afforded him by the formation of the corporate entity, as those of its employees." The trial court then indicated that Laurie, as an employee, could not be held individually liable absent a showing of purposeful, wanton conduct that would remove Laurie from the protections of the "co-employee" immunity afforded him pursuant to section 287.120 due to being an employee of Brooks's statutory employer.

The parties' briefing indicates that the parties had some confusion regarding some of the language in the trial court's judgment. In his reply brief, Brooks indicated that it was incumbent on him to challenge any alternative basis for the trial court's grant of summary judgment. *See MFA, Inc. v. HLW Builders, Inc.*, 303 S.W.3d 620, 626 (Mo. App. W.D. 2010) (failure to challenge one of two alternative bases for trial court's grant of summary judgment requires appellate court to affirm the judgment on the unchallenged ground). Thus, Brooks wanted to make sure that he challenged any possible alternative ground for the grant of summary judgment.

Although the language in the trial court's judgment is not a model of clarity, we have determined that the trial court's grant of summary judgment in favor of Laurie was based on the

16

trial court's determination that Laurie was an employee of Crown Center Farms and therefore was not individually liable for Brooks's injuries due to the trial court's conclusion that Crown Center Farms was Brooks's statutory employer. Accordingly, the corporate status of Crown Center Farms was not an alternative basis for the trial court's grant of summary judgment in favor of Laurie. However, lest there be confusion on remand, to the extent that the trial court was intending to grant summary judgment in favor of Laurie on an alternative basis not raised in the motion for summary judgment (which asserted that Laurie was an employee of Crown Center Farms which was Brooks's statutory employer), such action was in error.

## Conclusion

The trial court's judgment is reversed and the case remanded for further proceedings consistent with this opinion.

_____
Thomas N. Chapman, Judge

All concur.